**WRIGHT MEDICAL TECHNOLOGY, INC., Plaintiff,**

**v.**

**George E. SOMERS and The Somers Group, Inc., Defendants.**

**Civil Action No. 99–472(JBS).**

United States District Court,
D. New Jersey.

April 9, 1999.

James L. Beausoleil, Jr., Duane, Morris & Heckscher LLP, Cherry Hill, NJ, Matthew Taylor, Duane, Morris & Heckscher LLP, Philadelphia, PA, for Plaintiff.

John J. Levy, Montgomery, McCracken, Walker & Rhoads, LLP, Cherry Hill, NJ, Mitchell A. Kramer, Kramer & Friedman, Rydal, PA, for Defendants.

## OPINION

SIMANDLE, District Judge.

This matter is before the court on the motion by plaintiff, Wright Medical Technology, Inc. ("Wright") for a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, and on the motion of

defendants, George E. Somers and The Somers Group, Inc. (collectively "Somers"), to dismiss Wright's Verified Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). This court has diversity jurisdiction under 28 U.S.C. § 1332,[1] and Tennessee law supplies the law of decision.[2]

Wright, a designer, manufacturer and seller of medical implant devices including as knee and hip implants, seeks an Order enjoining Somers, its former exclusive representative in New Jersey, Delaware and Eastern Pennsylvania, from competing against Wright in the sale of medical implant devices in that territory, pursuant to the non-competition provisions set forth at ¶¶ 5 and 13(E) of the November 1, 1994 Distributor Agreement ("the Distributor Agreement") between the parties, pending arbitration of their dispute, pursuant to ¶ 16 of the Distributor Agreement. Somers opposes Wright's motion for a preliminary injunction and moves to dismiss Wright's Verified Complaint, contending (1) that the Distributor Agreement expired by its own terms on October 31, 1997, rendering the non-competition provisions unenforceable thereafter, and (2) that even if the parties did extend the Distributor Agreement by their conduct, as Wright maintains, Somers did not trigger the non-competition provisions by terminating the Distributor Agreement in the manner set forth in ¶ 13(E). Both parties agree that the contractual dispute is arbitrable before the American Arbitration Association, pursuant to ¶ 16 of the Distributor Agreement, and are endeavoring to commence the arbitration hearing promptly.

The court finds, based upon the verified pleadings, affidavits and documentary evidence presented, that it is highly likely that the arbitrator will find that the parties did extend the Distributor Agreement beyond its express expiration date of October 31, 1997 through October 30, 1998, when Somers effectively terminated the Distributor Agreement within the meaning of ¶ 13(E) by surreptitiously entering into an agreement with a competitor of Wright's to distribute the competitor's products in the same territory in which he was supposed to be representing Wright. Thus, the court finds that Wright has established a likelihood of success on the merits at the arbitration. The court also finds that Wright is suffering and will continue to suffer irreparable harm if injunctive relief is not granted, that the possibility of harm to Somers if injunctive relief is granted can be minimized and does not outweigh the harm Wright will suffer if injunctive relief is denied, and that granting injunctive relief to Wright will serve the public interest. Accordingly, the court grants Wright's motion for a preliminary injunction restricting competition by Somers in New Jersey, Delaware and Eastern Pennsylvania pending arbitration of the dispute, and denies Somers' motion to dismiss for failure to state a claim upon which relief can be granted.

## BACKGROUND

### A. Factual History

On October 17, 1994, Wright and Somers entered into a Distributor Agreement, effective November 1, 1994, pursuant to which Wright appointed Somers as its exclusive representative in New Jersey and Delaware for a period of three years. (Fisher Aff., Ex. A at ¶¶ 1–2.) In exchange, Somers agreed to the following non-competition provision:

#### 5. Competitive Products

---

1. Wright is a Delaware Corporation with its principal place of business in Tennessee. George E. Somers is a citizen of New Jersey, and The Somers Group is New Jersey Corporation with its principal place of business in New Jersey. The amount in controversy exceeds $75,000.

2. The November 1, 1994 Distributor Agreement at issue in this matter provides that it "shall be governed and interpreted in accordance with the laws of the State of Tennessee." (Distributor Agreement at ¶ 14.)

In exchange for being granted the exclusive distribution rights in the Territory under this Agreement, Distributor agrees that neither Distributor nor any employee or representative of Distributor shall, either directly or indirectly, handle, sell or in any way have a financial interest in the handling or sale of any medical products which compete directly or indirectly with the Products, or undertake the representation or sale of any other products or services directly associated with the health care business, unless Wright Medical agrees to the contrary in advance in writing.

(*Id.* at ¶ 5.)

The parties also agreed to the following term and termination provision:

13. *Term and Termination*

Unless otherwise terminated by mutual written agreement, this Agreement shall continue in effect for a period of three (3) years from the date hereof provided, however, that the confidentiality provisions of Paragraph 9 shall survive termination. This Agreement can otherwise be terminated in the following circumstances:

\*     \*     \*     \*     \*     \*

(E) By Distributor without cause upon ninety (90) days prior written notice to Wright Medical. Under such circumstances, however, Distributor shall use its best efforts to effectuate a smooth transition of the Distributor's business to a new Distributor and shall remain bound, in the Territory for a period of one (1) year from the date of termination, by the non-competition provisions of Paragraph 5 above regarding medical products.

(*Id.* at ¶ 13.)

The parties further agreed that the Agreement was to be "governed and interpreted in accordance with the laws of the State of Tennessee" and that "[all disputes arising in connection with this Agreement, including the interpretation, performance or non-performance of the Agreement]," would be arbitrable. (*Id.* at ¶¶ 14, 16.)

On the same day Wright and Somers entered into the Distributor Agreement, Wright and Somers also entered into a separate letter agreement ("the Letter Agreement") that provided, in pertinent part, as follows:

This letter agreement provides additional terms to the Distributor Agreement signed and executed on the same date as below [and] the terms of this agreement supersedes (sic.) any terms of the Distributor Agreement to the extent they are inconsistent. By the signature below, the parties agree to the following terms:

\*     \*     \*     \*     \*     \*

2. Wright Medical will provide you at your option, a monthly commission/draw of $33,333 per month for a period of 24 months. To the extent your calculated commission is less than that amount, Wright will provide you the difference, which difference will be considered a loan. To the extent if your calculated commission exceeds that amount, such excess shall be used to reduce your outstanding loan balance, if any. At the end of the 24 month period, and outstanding loan balance will bear simple interest at the current rate and will be payable in 24 equal installments.

(Fisher Aff., Ex. B.)

Throughout 1995 and into 1996, Somers performed under the Distributor Agreement. He was paid commissions by Wright, and also began to incur debt under the Letter Agreement. In July 1996, Wright extended Somers' territory into Eastern Pennsylvania. In November 1996, Wright began deducting money from Somers' commissions to pay down his indebtedness under the Letter Agreement, which had grown to an amount in excess of $200,000. (Fisher Aff., ¶¶ 5–9; March 15, 1999 Somers Aff. ¶¶ 10–12.)

Beginning in the second half of 1996 and continuing into 1997, Somers began to inquire about a new contract with Wright. Nevertheless, the original expiration date of the three-year Distributor Agreement—October 31, 1997—came andwent without a new contract in place, the parties continued their relationship unchanged, and they agreed in November 1997 to reduce the amount Wright would deduct from Somers' commission each month to pay off his indebtedness under the Letter Agreement to $2,000 per month. Somers continued to serve as Wright's representative in New Jersey, Delaware and Eastern Pennsylvania while he attempted to negotiate a new contract with Wright. (March 15, 1999 Somers Aff. at ¶¶ 13–16.) In fact, Somers continued to expect Wright to protect his exclusive territories in New Jersey, Delaware and Eastern Pennsylvania, and on one occasion after November 1, 1997, asked Wright to enforce his exclusivity when he learned that another representative was selling Wright products in Delaware. (Somers N.T. at 165:6–9; 147:3—150:21.) Additionally, Wright expanded Somers' territory in Eastern Pennsylvania in March 1998. (Fisher Aff. at ¶ 8; Somers N.T. at 159:10—164:10.)

In March 1998, Somers retained counsel to represent him in his negotiations with Wright. In correspondence with Wright, Somers' counsel expressed Somers' position that the Distributor Agreement had expired by its own terms on October 31, 1997, and that Somers was continuing to represent Wright without a written contract while negotiations for a new contract proceeded. (*See* March 15, 1999 Somers Aff. at ¶¶ 16–18 and Ex. A.) However, Somers continued to sell Wright products and Wright continued to pay commissions based on those sales, minus $2,000 per month to reduce Somers' indebtedness under the Letter Agreement, throughout the spring and summer of 1998.

The negotiations for a new distributor agreement broke off near the end of July 1998, but in September 1998 the parties did reach an agreement regarding Somers' indebtedness under the October 17, 1994 letter agreement. By letter to Somers dated September 8, 1998, Wright's Senior Director of Sales, Mark Fisher, set forth the terms of the agreement as follows:

Per our recent discussion at the National Sales Meeting regarding the debt of 187,439.16 owed by you the following program has been put in place to support the ongoing efforts or you and your organization.

1. The current monthly deduction of 2,000 per month will be reduced to 1,000 per month for the next 24 months (August 1998 through July 2000).

2. The remaining debt of 163,439.16 will be written off by WMT in August 1998. You will have no further financial obligation regarding this issue. George, I believe this is good for all parties and I hope this demonstrates to you a true commitment to what we believe you can accomplish in the short and long term.

(Fisher Aff., Ex. D.) Somers endorsed the September 8, 1998 letter from Fisher on September 17, 1998. (*See id.*) Somers admits that it was his intention when he endorsed the September 8, 1998 letter to continue his relationship with Wright for the long term, and that Wright probably would not have agreed to forgive his indebtedness to them if they knew he was in negotiations to sign an agreement to represent a competitor. (Somers N.T. at 117:11—118:5.)

On October 30, 1998, Somers entered into a distributor agreement with Encore Orthopedics, Inc. ("Encore"), pursuant to which Encore appointed Somers as its exclusive representative to sell Encore's line of total joint and trauma products in Delaware, Eastern Pennsylvania, South Jersey and parts of Maryland. (Beausoleil Aff., Ex. B at ¶ 1.) The Encore agreement prohibits Somers from representing any competitor of Encore's without Encore's express prior consent. (*Id.* at ¶ 8.5.) En-

core did not consent to Somers' continued representation of Wright. (*Id.* at Ex. D.)

Three days after Somers signed his exclusive agreement with Encore, he attended a special meeting of Wright distributors at Wright's Tennessee headquarters as a new member of Wright's Distributor Advisory Panel. In that capacity, Somers was privy to Wright's marketing plans and strategies. Somers, however, continued to conceal his relationship with Encore. (Somers N.T. at 223:6—234:22.)

In late November 1998, Fisher heard rumors to the effect that Somers was representing Encore within his exclusive Wright territory, in violation of the Distributor Agreement. When Fisher contacted Somers about the rumors, Somers denied them. (Fisher Aff. at ¶¶ 14–16; Somers N.T. at 250:20—252:24.)

In January 1999, Fisher came into possession of a letter dated December 10, 1998 on Somers stationery from Tom Nicholson, a Somers sales representative, to Wyoming Valley Health Care System in Wilkes–Barre, Pennsylvania, which provides, in pertinent part, as follows:

> To make a long story short, The Somers Group is moving to a new supplier of orthopedic devices for our surgeons. We are transitioning from Wright Medical to Encore Orthpedics, Inc. Encore is a very solid, rapidly growing supplier of knees, hips, shoulders, spinal fixation devices and biologics based in Austin Texas.
>
> Dr. Byron has notified Mr. Campbell that he will be changing over and we are requesting permission to start doing cases using Encore products beginning January 1st. Pricing will be less than what the hospital is currently paying for similar Wright Medical products.
>
> \* \* \* \* \* \*
>
> George and I look forward to meeting with you to discuss the details.

(Fisher Aff., Ex. E.) Fisher also learned that Dr. Gerino at the University of Pennsylvania had substituted an Encore product for a Wright product that had been supplied for use in a clinical test. (Fisher Aff. at ¶ 17.)

Alarmed by this information, Fisher called Encore and asked for the name of Encore's representative in New Jersey, Delaware and Eastern Pennsylvania. Encore identified Somers as their representative in those territories. (Fisher Aff. at ¶ 19.) Fisher also spoke to a Somers representative, who informed Fisher that Somers had flown all of his representatives to Encore's headquarters in Austin, Texas for training in October or November 1998, and that Encore products were stockpiled at Somers' offices in Turnersville, New Jersey.

Based on this information, Fisher personally delivered a letter to Somers on February 1, 1999 advising Somers that Wright considered his actions a breach of and an effective termination of the Distributor Agreement and requesting that he immediately cease and desist his illegal conduct. (Fisher Aff. at ¶¶ 23–24 and Ex. F.)

## B. *Procedural History*

On February 2, 1999, Wright initiated this action by filing a Verified Complaint and a motion for temporary restraining order and preliminary injunction under Rule 65. The only relief Wright seeks in the Verified Complaint is temporary injunctive relief pending arbitration.

Following a hearing on February 2, the court entered a temporary restraining order granting most of the relief Wright sought. Specifically, the court enjoined Somers from disclosing confidential business and technical information belonging to Wright, in accordance with ¶ 9 of the Distributor Agreement, and from divulging proprietary information belonging to Wright, such as lists of existing or potential clients. Additionally, the court ordered Somers to cease and desist from representing that he was an authorized Wright distributor, to cooperate in facili-

tating a smooth and immediate transfer of his telephone line and all incoming calls for Wright to an office or line designated by Wright, to provide Wright with a copy of an updated and accurate surgery schedule and to continue to cover all scheduled surgeries through February 12, 1999, to provide Wright with an updated and complete telephone directory of all existing clients, and to cooperate with Wright in effecting a smooth transition of Wright's business to another distributor by February 12, 1999. The court denied without prejudice Wright's application to enjoin Somers from competing with Wright in New Jersey, Delaware and Eastern Pennsylvania, but sought further briefing on the issues raised regarding the covenant not to compete under Tennessee law. The court also established a briefing schedule and a date for a hearing on Wright's motion for a preliminary injunction.

The parties took expedited discovery, including the deposition of Somers on March 1, 1999. On March 3, 1999, the court granted Somers leave to file a motion to dismiss the Verified Complaint for failure to state a claim upon which relief can be granted. Somers filed his motion to dismiss on March 16, 1999. The parties completed all briefing on both Wright's motion for a preliminary injunction and Somers' motion to dismiss by March 19, 1999, and the court held the hearing on March 26, 1999.

## DISCUSSION

I. *Wright's Motion for Preliminary Injunction*

A. *Preliminary Injunction Standard*

In *Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir.1989), the Third Circuit held that "a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied." The court identified those "traditional prerequisites" as follows:

(1) whether the movant has demonstrated reasonable probability of eventual success in the litigation; (2) whether the movant has demonstrated that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the *status quo;* (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest.

*Id.* at 812–13. The court noted that "the 'preservation of the *status quo*' represents the goal of preliminary injunctive relief in any litigation, including in an arbitrable dispute." *Id.* at 813. However,

because the district court must focus on preservation of the integrity of the arbitration process, the relief granted need not be limited to restoring the parties to their pre-litigation position without regard to the irreparable injury the movant faces. If the existing 'status quo' is currently causing one of the parties irreparable injury and thereby threatens to nullify the arbitration process, then it is necessary to alter the situation to prevent the injury.

*Id.* at 814.

■ Accordingly, in order to obtain preliminary injunctive relief in the present case, Wright must demonstrate that: (1) that it is likely to succeed on the merits in the arbitration proceeding; and (2) that it will be irreparably harmed in the meantime in a manner that threatens to render the arbitration proceeding meaningless if the court does not grant preliminary injunctive relief pending the outcome of the arbitration proceeding; (3) that the possibility of harm to Somers and/or other interested persons if injunctive relief is granted would not outweigh the harm it will suffer if injunctive relief is denied; and (4) that the injunction it seeks will serve the public interest.

B. *Analysis*

1. *Likelihood of Success on the Merits*

In its reply brief in support of its motion for preliminary injunction, Wright suc-

cinctly defined the principal issue this court must decide as follows:

> The first factor the Court must consider in this petition for preliminary injunction is the likelihood that Plaintiff Wright will prevail on the merits at the arbitration hearing. In this case, Wright must prove that a contract existed between Wright and its exclusive distributor, Somers, and that the contract contained a valid and enforceable non-competition provision that was triggered by Somers' termination of the Agreement.

(Wright's Reply Brief In Support of Motion for Preliminary Injunction at 8). Thus, the court must predict whether Wright is likely to convince the arbitrator that (1) the November 1, 1994 Distributor Agreement between Wright and Somers was still in effect when Somers entered into the Encore agreement on October 30, 1998 and, if so, (2) whether Somers' entering into the Encore agreement constitutes a termination of the Distributor Agreement between Wright and Somers, triggering the non-competition provisions of the Distributor Agreement. The parties agree that Tennessee law governs this dispute, as provided in the Distributor Agreement.

Citing *Delzell v. Pope*, 200 Tenn. 641, 294 S.W.2d 690, 694 (1956)("The general rule is that when, upon the expiration of a contract of employment of a definite term, the employee continues to render the same services as he rendered during the term of the contract without explicitly entering into any new agreement, it will be presumed prima facie that he is serving under a new contract having the same terms and conditions as the original one")(quoting 35 Am.Jur. § 15:454), and other authorities standing for the proposition that assent to a binding agreement can be manifested by conduct, Wright argues that Somers extended the November 1, 1994 Distributor Agreement, including the non-competition provisions, by: (1) concurrently executing the October 17, 1994 letter agreement addendum to the Distributor Agreement, which stated that it "supersedes any terms of the Distributor Agreement to the extent they are inconsistent" and provided for 24 monthly commission/draw payments of $33,333 per month followed by 24 monthly repayments of the balance of any amounts paid that exceeded commissions actually earned during the first 24 months; (2) continuing to distribute Wright products in his territory after November 1, 1997; (3) continuing to accept commissions from Wright for sales he made after November 1, 1997; (4) obtaining Wright's enforcement of the exclusivity of his territory on one occasion after November 1, 1997; (5) negotiating a reduction of the amount Wright would deduct from his monthly commissions to satisfy his indebtedness to Wright under the October 17, 1994 letter agreement to $2,000 per month in November 1997; (6) negotiating a further reduction of the amount Wright would deduct from his monthly commissions to satisfy his indebtedness to Wright under the October 17, 1994 letter agreement to $1,000 per month over a 24 month period from August 1998 through July 2000, coupled with forgiveness of the remaining balance of $163,439.16, as reflected in a September 8, 1998 letter from Fisher endorsed by Somers on September 17, 1998; and (7) accepting, on October 7, 1998, a two year position on Wright's Distributor Advisory Panel commencing in November 1998. Wright further argues that Somers effectively terminated the Distributor Agreement within the meaning of ¶ 13(E), thereby triggering the non-competition provision of ¶ 5, by entering into an exclusive agreement to represent Encore throughout most of his Wright territory and beyond on October 30, 1998. Essentially, Wright argues that Somers repudiated his exclusive contract with Wright by entering into an exclusive contract to represent Encore in the same territory because Somers could not loyally serve both companies at the same time.

In opposition, Somers relies upon *Homebound Medical Care of Southeast Tennessee, Inc. v. Hospital Staffing Services of Tennessee, Inc.,* 1998 WL 46516, 1998 Tenn.App. LEXIS 94 (Tenn.Ct.App. Feb. 6, 1998), in which the court, following *B & L Corp. v. Thomas & Thorngren, Inc.,* 917 S.W.2d 674 (Tenn.Ct.App.1995), refused to enforce a non-competition provision of an employment contract that had expired according to its terms, notwithstanding the fact that the employment relationship between the employer and the employee continued for years after the expiration of the written contract. These cases stand for the proposition that, under Tennessee law, in the absence of a writing extending the employment contract, a non-competition clause expires with the written contract even if the employment relationship itself continues. The facts in the present case, however, reveal much more than the mere continuation of employment after the expiration of the written contract and distinguish this case from *Homebound Medical* and *B & L.*

In *Homebound Medical,* the defendant former employee had signed a series of employment agreements with the plaintiff former employer, the last of which was executed on January 1, 1988 and prohibited the employee from competing against the employer for three years following the date of his separation from employment. *Homebound Medical,* 1998 WL 46516 at *3, 1998 Tenn.App. LEXIS at *3. The employee left for a job with the employer's parent company in March 1992, and after resigning that position, took a position with a competitor of the employers in December 1993 or January 1994. *Id.* Similarly, in *B & L,* the defendant former employee signed an employment agreement at the time of his hiring by the plaintiff former employer in July 1982 that provided for a one year term of employment and that prohibited the employee from competing against the employer for three years after the termination of his employment. *B & L,* 917 S.W.2d at 676. The employee worked for the employer through January 1994, when he resigned or was fired for having undertaken plans as early as late 1992 to buyout the employer. *Id.* at 677. In neither case does the absence of a current written employment agreement during the years the employees continued to work for the employers after the expiration of their written employment agreements appear to have been an issue for either the employees or the employers during that time period. There is no mention of any negotiations for new written employment agreements, and there apparently were no additional benefits other than the mere continuation of employment that were extended to the employees by the employers that could represent additional consideration for the renewal or extension of the non-competition provisions of the expired contracts.

The facts of the instant case stand in stark contrast to those of *Homebound Medical* and *B & L.* First, in conjunction with his execution of the Distributor Agreement, Somers executed the Letter Agreement, which arguably extended the term of the Distributor Agreement through October 31, 1998 by providing for 24 months of commission/draw payments of $33,333 per month for 24 months, followed by repayment of any commissions paid but not actually earned by deduction from commission payments over the next 24 months. Then, in September 1998, as an outgrowth of negotiations for a new written contract, Wright and Somers agreed in writing that Wright would reduce the monthly deductions from commissions to $1,000 per month through July 2000 and forgive the remaining balance of over $163,000 that Somers owed Wright under the Letter Agreement. Somers admits that Wright expected him to continue to represent Wright for the long term and that Wright probably would not have agreed to forgive his debt if it knew that he was planning to sign a contract to represent Encore in his exclusive Wright territory. Under these circumstances, an arbitrator could certainly find that Wright

had given Somers valuable consideration in exchange for an extension of the Distributor Agreement, including the non-competition provision, through July 2000.

An arbitrator also could certainly find that Somers' execution of an exclusive contract with Encore on October 30, 1998 was a repudiation of the Distributor Agreement, effectively terminating the Distributor Agreement within the meaning of ¶ 13(E). Indeed, Somers could not possibly fulfill his duty of loyalty to Wright while simultaneously representing Encore in the same territory. This court finds it likely that the arbitrator will find that this breach was a termination by Somers, triggering the one-year non-competition provision by the Distributor Agreement's own terms.

Accordingly, the court finds that it is likely that Wright will convince an arbitrator that the Distributor Agreement remained in effect through October 30, 1998, and that Somers effectively terminated the Distributor Agreement on that date by executing an exclusive contract to represent Encore in his Wright territory, resulting in the one-year contractual bar against Somers' competing against Wright in the exclusive distribution area.

### 2. *Irreparable Harm*

■ Under Tennessee law, Wright "has a protectable business interest in its customer base" and "may legitimately restrict future competition from [Somers] to protect [its] goodwill and relations with its customers that were developed on [its] behalf¹ ... by [Somers]." *AmeriGas Propane, Inc., v. Crook*, 844 F.Supp. 379, 386 (M.D.Tenn.1993) (citations omitted). "The loss of customer goodwill and injuries that are a consequence of unfair competition are difficult to compute and can constitute irreparable harm." *Id.* at 390 (citations omitted).

In *AmeriGas*, the court found that the plaintiff was suffering irreparable harm where the defendants, who had developed relationships with certain consumers of propane gas on behalf of the plaintiff, were soliciting and servicing these same customers on behalf of a competitor after leaving the plaintiff's employment, in violation of non-competition provisions of their employment agreements with the plaintiff. The court reasoned that the defendants had weakened the plaintiff's relationships with its customers merely by soliciting them on behalf of the competitor, and that the plaintiff was irreparably harmed by defections to the competitor as a result of the solicitations because the value of the lost customers, which included both direct sales to those customers as well as referrals to other potential customers, was difficult to quantify since it was impossible to predict how long the plaintiff would have maintained a business relationship with those lost customers if the defendants had not improperly solicited them for the competitor. *Id.*

■ In the present case, Wright has adduced evidence in the form of affidavits from Fisher, its Senior Director of Sales, and Lawrence Kluge, its new representative in Somers' former territory, in which they claim that Wright has lost customers as a result of Somers' disparagement of and failure to enthusiastically represent Wright and/or his solicitations on behalf of Encore between November 1, 1998 and February 2, 1999. (*See* Fisher Supp. Aff. at ¶¶ 2–3; Kluge Aff. at ¶¶ 3–9.) Although Somers claims that some of the lost customers identified by Kluge in his affidavit are not attributable to his efforts on behalf of Encore, Somers tacitly acknowledges that he has successfully solicited at least one former Wright customer, Dr. Byron of Wilkes Barre, Pennsylvania, on behalf of Encore. (*See* March 26, 1999 Somers Aff. at ¶¶ 2–5.) According to Kluge, Dr. Byron represented $200,000 in business for Wright in 1998. (Kluge Aff. at ¶ 9.) While Somers had gross sales of $2,626,076 worth of Wright products in 1998 (Fisher Aff. at ¶ 11 and Ex. D), Somers sold only $80,000 worth of Wright products in November 1998, and Wright sold only $42,133 worth

of products in Somers' former territory in March 1999 through March 19, 1999. (Supp. Fisher Aff. at ¶ 3.)

This evidence is sufficient to establish that Somers is using his familiarity with Wright's customers to solicit new business opportunities for Encore. As the court in *AmeriGas* recognized, these solicitations themselves are bound to weaken Wright's relationships with its customers, and the value of the customer relationships Wright has lost and may continue to lose is difficult to quantify. This is the sort of loss to business reputation and customer goodwill, resulting from Somers' breach of his promise not to compete in this market for one year following termination, that is not monetizable and must properly be enjoined to prevent irreparable harm pending arbitration. Moreover, if this injunctive relief were not granted, Wright would be without an adequate remedy at law, as there is no indication that Somers would be able to satisfy a substantial damage judgment compensating Wright for the ongoing breach, even if it were monetizable. Accordingly, the court finds that Wright has met its burden of demonstrating that it is suffering and will continue to suffer irreparable harm if Somers is not enjoined from unfairly competing against Wright in the sale of knee and hip implants in the territory of New Jersey, Delaware and Eastern Pennsylvania.

### 3. *Balance of Harms*

▮▮ Under Tennessee law, "[t]here is a limit to what [a] court may do to protect an individual from the consequences of [his] own actions" when it is called upon to enforce the non-competition provisions of an employment contract. *Dabora, Inc. v. Kline,* 884 S.W.2d 475, 479 (Tenn.App.1994)(finding that financial hardship to former employee from enforcement of non-competition provision of employment contract did not outweigh harm to employer from unfair competition). However, it is well-settled under Tennessee law that non-competition provi-sions are enforceable only if they are reasonable, *i.e.,* only to the extent necessary to protect the business interests of the employer. *See Allright Auto Parks, Inc. v. Berry,* 219 Tenn. 280, 409 S.W.2d 361, 363 (1966)(refusing to enforce non-competition provision of employment contract to full territorial or temporal limits provided for in contract). Thus, it is this court's duty to enforce the non-competition provisions of the Distributor Agreement, but only to the extent necessary to protect Wright's business interests, without imposing unnecessary or punitive financial hardship on Somers. *See Central Adjustment Bureau, Inc. v. Ingram,* 678 S.W.2d 28, 37 (Tenn.1984)("unless the circumstances indicate bad faith on the part of the employer, a court will enforce covenants not to compete to the extent that they are reasonably necessary to protect the employer's interest without imposing undue hardship on the employee when the public interest is not adversely affected")(internal quotes and citations omitted).

The court finds that there is no evidence that Wright has acted in bad faith; to the contrary, Wright has acted at all relevant times, until discovery Somers' breach and terminating his distributorship on February 1, 1999, in a supportive manner consistent with its affirmation of the long-term exclusive distributorship with Somers. These supportive steps included placing Somers onto the elite Distributor Advisory Panel in November 1998, the forgiveness of Somers accumulated indebtedness of $163,439.16 on September 8, 1998, and the parties agreement to restructure the remaining $24,000 debt over the following 24 months through July 2000, endorsed by Somers on September 17, 1998.

The bad faith of Somers, on the other hand, is demonstrated by his conduct in surreptitiously negotiating and entering into an exclusive distributorship with a Wright competitor, Encore, and falsely denying the rumors that he had done so, while promoting Encore's products over Wright's.

■ In the present case, the court finds that the competing interests of protecting Wright's business relationships with its customers without imposing unnecessary or punitive financial hardship on Somers can best be accomplished by limiting the enforcement of the non-competition provisions of the Distributor Agreement so as simply to enjoin Somers from soliciting sales of knee or hip implants on behalf of Encore or any other supplier from any doctor, medical practice, medical center, clinic or hospital in the territory of New Jersey, Delaware or Eastern Pennsylvania that has purchased knee or hip implants from Wright since November 1, 1997. Somers would not be restricted from soliciting business on behalf of Encore from any doctor, medical practice, medical center, clinic or hospital that has not been a Wright customer since November 1, 1997, nor would Somers be restricted from soliciting sales of products other than knee and hip implants on behalf of Encore from any doctor, medical practice, medical center, clinic or hospital that has been a Wright customer since November 1, 1997, since Wright no longer competes with Encore with respect to product lines other than knee and hip implants. This is precisely the type of non-competition provision enforced by the court in *AmeriGas*. *See AmeriGas*, 844 F.Supp. at 390–91. In the court's view, such an injunction would provide adequate protection to Wright's customer relationships and goodwill without putting Somers out of business. Accordingly, the court finds the balance of harms favors granting an injunction prohibiting Somers from soliciting sales of knee or hip implants on behalf of Encore or any other supplier from any doctor, medical practice, medical center, clinic or hospital in the territory of New Jersey, Delaware or Eastern Pennsylvania that has purchased knee or hip implants from Wright since November 1, 1997.

### 4. The Public Interest

■ Judicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships. *AmeriGas*, 844 F.Supp. at 390. In the present case, as in *AmeriGas*, there would be no harm to the public interest in prohibiting Somers from soliciting Wright's customers on behalf of Encore because any potential customer of Encore's, including current Wright customers, would be free to choose the product it desires to use "so long as the customer has not been illegally solicited." *Id.* Accordingly, the court finds that the public interest would be served by granting an injunction prohibiting Somers from soliciting sales of knee or hip implants on behalf of Encore or any other supplier from any doctor, medical practice, medical center, clinic or hospital in the territory of New Jersey, Delaware or Eastern Pennsylvania that has purchased knee or hip implants from Wright since November 1, 1997, pending the parties' arbitration.

### 5. Duration of the Injunction

The injunctive relief being granted to Wright is interim relief designed to "prevent one party from unilaterally eviscerating the significance of the agreed-upon procedures" for resolving their dispute through arbitration. *Ortho Pharmaceutical*, 882 F.2d at 812. Temporary enforcement of the non-competition provision pending a determination by the American Arbitration Association ("AAA") is necessary. Because this court has found it likely that Somers breached the parties' exclusive distributorship agreement on October 30, 1998, as discussed above, this interim relief cannot extend beyond one year from that date, namely, October 30, 1999.[3] This

---

**3.** This court recognizes that this October 30, 1999 expiration date gives temporary relief to Wright that is significantly less than the arbitrator may eventually award. Somers has not

previously been restrained from competing by court order, as the court's Temporary Restraining Order of February 2, 1999 had denied Wright's application to restrain Somers

court's injunction will expire at an earlier date, of course, if the arbitrator enters his or her award before that date. The parties have agreed to expedited arbitration and were commencing the arbitrator selection process as of March 26, 1999, so it is likely that the arbitration process will commence very soon. The accompanying Order Granting Injunctive Relief will reflect this time limitation.

In summary, the court finds that Wright is likely to succeed on the merits before an arbitrator, that Wright will be irreparably harmed if injunctive relief is denied, that the harm Wright will suffer if injunctive relief is denied outweighs the harm Somers will suffer is injunctive relief is granted, and that granting injunctive relief will serve the public interest. Accordingly, the court grants Wright's motion for a preliminary injunction and enjoins Somers from soliciting sales of knee or hip implants on behalf of Encore or any other supplier from any doctor, medical practice, medical center, clinic or hospital in the territory of New Jersey, Delaware or Eastern Pennsylvania that has purchased knee or hip implants from Wright since November 1, 1997, pending arbitration of the dispute between the parties in accordance with ¶ 16 of the Distributor Agreement.

## II. *Somers' Motion to Dismiss*

Somers seeks dismissal of Wright's Verified Complaint, contending (1) that the Distributor Agreement had expired by its own terms on November 1, 1997 and was unenforceable thereafter, and (2) that even if the parties extended the Distributor Agreement by their conduct after November 1, 1997, Somers did not trigger the non-competition provision of ¶ 5 by terminating the contract in the manner set forth in ¶ 13(E).

The only relief Wright seeks in this action, however, is a preliminary injunction pending arbitration of the dispute between the parties. This court need not decide the merits of Wright's claims or of Somers' defenses in order to decide the matter before the court. Having determined that Wright is likely to convince an arbitrator that the parties extended the Distributor Agreement through October 30, 1998 by their writings and by their conduct and that Somers' execution of an exclusive agreement to represent Encore in his Wright territory on that date breached and terminated the Distributor Agreement within the meaning of ¶ 13(E), this court's consideration of the merits of the parties legal positions is complete.

In any event, Somers' arguments in support of this motion to dismiss the Verified Complaint for failure to state a claim upon which relief may be granted have been considered in the foregoing discussion and need not be repeated here. Suffice it to say that, under the standard of Rule 12(b)(6), the court must construe the Verified Complaint in the light most favorable to Wright to determine whether, under any reasonable reading of the pleadings, Wright may be entitled to relief. *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 665–66 (3d Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). The relief sought in the Verified Complaint is temporary equitable relief pending arbitration. This is not a complaint which seeks contractual adjudication, for the parties and the court recognize that the decision upon the merits of the parties' disputes regarding the interpretation and enforcement of the Distributor Agreement rests with the AAA arbitration process. The court's role is circumscribed to predicting the arbitration

from competing, pending further briefing and factual development at the preliminary injunction hearing on March 26, 1999. The duration of this temporary injunction, beginning today, is just approximately six and one-half months if it expires on October 30, 1999, while the arbitrator may see fit to enlarge the

non-competition period so that Wright can receive the full benefit of its agreement with Somers. This court's limitation on the length of the preliminary injunction also limits the extent of harm to Somers in the event Wright does not prove its entitlement to such relief to the arbitrator's satisfaction.

outcome and entertaining temporary injunctive relief to preserve the parties' rights in an equitable manner. Since, as the court has found, the Verified Complaint states facts upon which Wright shall obtain this temporary injunctive relief, Somers' motion to dismiss will be denied.

## CONCLUSION

For these reasons, the court grants Wright's motion for a preliminary injunction and enjoins George E. Somers and The Somers Group, Inc. from soliciting sales of knee or hip implants on behalf of Encore or any other supplier from any doctor, medical practice, medical center, clinic or hospital in the territory of New Jersey, Delaware or Eastern Pennsylvania that has purchased knee or hip implants from Wright since November 1, 1997, pending arbitration of the dispute between the parties in accordance with ¶ 16 of the Distributor Agreement.[4] The court also denies Somers' motion to dismiss. The accompanying Order, which will expire when the arbitration is concluded or on October 30, 1999, whichever is sooner, is entered.

## ORDER GRANTING INJUNCTIVE RELIEF

THIS MATTER having come before the court on the motion of plaintiff, Wright Medical Technology, Inc. ("Wright") for a preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, enjoining defendants George E. Somers and The Somers Group, Inc. (collectively "Somers"), its former exclusive representative in the territory of New Jersey, Delaware and Eastern Pennsylvania, from competing against Wright in the sale of medical implant devices in that territory, in accordance with the non-competition provisions of the November 1, 1994 Distributor Agreement between the parties, pending arbitration of their dispute, pursuant to the arbitration provision of the Distributor Agreement; and Somers having opposed Wright's motion for preliminary injunction and moved to dismiss Wright's Verified Complaint for failure to state claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6); and the court having considered the submissions of the parties and having heard oral argument from counsel on March 26, 1999; and for the reasons set forth in the accompanying Opinion;

IT IS on this day of April, 1999, hereby ORDERED that Wright's motion for a preliminary injunction is GRANTED; and

IT IS FURTHER ORDERED that George E. Somers and The Somers Group, Inc. are hereby enjoined from soliciting sales of knee or hip implants on behalf of Encore Orthopaedics, Inc. ("Encore") or any other supplier from any doctor, medical practice, medical center, clinic or hospital in the territory of New Jersey, Delaware or Eastern Pennsylvania that has purchased knee or hip implants from Wright since November 1, 1997, pending arbitration of the dispute between the parties in accordance with ¶ 16 of the Distributor Agreement; and

IT IS FURTHER ORDERED that this Order shall expire upon completion of arbitration before the American Arbitration Association, or on October 30, 1999, whichever comes first; and

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 65(c), Wright shall post a bond in the amount of $100,000 as surety with the

---

4. The court is required, under Rule 65(c), to require the applicant for injunctive relief to post security, "in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R.Civ.P. 65(c). In this case, the court finds the appropriate amount of such surety to be $100,000. As a condition of injunctive relief, the court requires Wright to post a bond in this amount as surety with the Clerk of the Court before the close of business on April 13, 1999.

Clerk of the Court not later than April 13, 1999; and

IT IS FURTHER ORDERED that Somers' motion to dismiss is DENIED.