**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHOICE HOTELS INTERNATIONAL,
INCORPORATED,

        *Plaintiff-Appellee,*

    v.

BSR TROPICANA RESORT,
INCORPORATED, a Florida
Corporation; SUSAN HOUNSOM;
MILTON JOHNSON,

        *Defendants-Appellants.*

No. 00-2507

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-00-2305-PJM)

Argued: May 8, 2001

Decided: June 8, 2001

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Wilkins wrote the
opinion, in which Chief Judge Wilkinson and Judge Luttig joined.

---

### COUNSEL

**ARGUED:** Onkar Nath Sharma, SHARMA & BHANDARI, Silver
Spring, Maryland, for Appellants. Kerry Shanahan McGeever, Silver
Spring, Maryland, for Appellee.

**OPINION**

WILKINS, Circuit Judge:

SR Tropicana Resort, Incorporated and two affiliated individuals (collectively, "BSR") appeal the denial of their motion to dismiss a lawsuit against them in favor of arbitration. Because the relevant contractual language requires arbitration of one of the two claims against BSR, we vacate the decision of the district court and remand for further proceedings.

I.

This case arises from a franchise agreement ("the Agreement") between BSR and Appellee Choice Hotels International, Incorporated (Choice). Under the Agreement, BSR agreed to open a motel in Davenport, Florida, and Choice authorized BSR to use the "Quality Inn" brand name. Three terms of the Agreement are relevant here. First, BSR was required to pay Choice a non-refundable $25,000 "affiliation fee" upon signing the Agreement. J.A. 10. Second, in the event of termination, the Agreement allowed Choice to recover liquidated damages. Third, the Agreement contained the following arbitration provision:

> Except for claims for indemnification, *actions for collection of moneys owed [to Choice] under this Agreement*, or actions seeking to enjoin [BSR] from using [Choice's trademarks] in violation of this Agreement, any controversy or claim relating to this Agreement, or the breach of this Agreement, including any claim that this Agreement or any part of this Agreement is invalid, illegal, or otherwise voidable or void, will be sent to final and binding arbitration
> . . . .

*Id.* at 20 (emphasis added).

After less than two years, and before BSR opened its hotel, Choice sued BSR, alleging that (1) BSR failed to pay the affiliation fee and (2) BSR breached the Agreement, prompting Choice to terminate it

and causing damages to Choice of $586,600. BSR moved to dismiss, asserting, *inter alia*, that the Agreement required arbitration of Choice's claims. The district court denied the motion; as is relevant here, the court ruled that Choice's claims were not arbitrable because they fell within the exception for "actions for collection of moneys owed." After the district court denied reconsideration, BSR took this interlocutory appeal. *See* 9 U.S.C.A. § 16(a) (West 1999) (authorizing interlocutory appeals from certain orders favoring litigation over arbitration).

## II.

Before addressing BSR's appellate claim, we must consider Choice's contention that BSR never properly invoked the Federal Arbitration Act (FAA). We hold that this contention is meritless.

As is relevant here, the FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements. *See* 9 U.S.C.A. § 3 (West 1999). According to Choice, BSR's motion to dismiss was not a proper § 3 motion because the sole remedy available under § 3 is a stay. Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Moreover, a hyper-technical reading of BSR's pleadings would be inconsistent with the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). BSR made clear during proceedings in the district court that it was "seeking enforcement of the arbitration clause of the Agreement." J.A. 141. This is sufficient to invoke the full spectrum of remedies under the FAA, including a stay under § 3.

## III.

We now turn to BSR's assertion that the Agreement requires arbitration of both of Choice's claims. Because this appeal involves a matter of contract interpretation, we review the decision of the district court de novo. *See United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001). Agreements to arbitrate are construed according to the ordinary rules of contract interpretation, as augmented by a fed-

eral policy requiring that all ambiguities be resolved in favor of arbitration. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995).

A.

The Agreement provides for arbitration of "any controversy or claim relating to this Agreement, or the breach of this Agreement," subject to three exceptions. J.A. 20. This appeal requires us to interpret one of these exceptions, which embraces "actions for collection of moneys owed [to Choice] under this Agreement" ("the collection exemption"). *Id.*

The crucial terms within this phrase are "collection" and "owed." "To *collect* a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings." *Black's Law Dictionary* 263 (6th ed. 1990) (emphasis added). To "owe" means "[t]o be bound to do or omit something, especially to pay a debt." *Id.* at 1105. Both of these definitions point us to the word "debt," which denotes a "sum of money due by certain and express agreement" or a "fixed and certain obligation to pay money or some other valuable thing or things." *Id.* at 403. In light of these definitions, we hold that the collection exemption applies to actions by Choice to enforce specific payment obligations that are "fixed" by the Agreement and not contingent on additional events. This interpretation of the phrase "actions for collection" accords with the ordinary understanding of the phrase "collection action." *See, e.g.*, *Young v. Commissioner*, 240 F.3d 369, 372 (4th Cir. 2001) (referring to "collection action" against defaulting debtor); *cf. Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 548-51 (1988) (holding, in the context of the Employee Retirement Income Security Act, that a procedure known as a "collection action" may be used to enforce payment of promised contributions to retirement plans but not to determine whether additional contributions are mandated by law).

The parties offer two alternative readings of the collection exemption. BSR contends that the exemption is limited to the enforcement of judgments. For its part, Choice asserts that the phrase embraces all actions seeking monetary damages. We find neither of these interpretations persuasive.

Under BSR's interpretation, most disputes between Choice and BSR would proceed to arbitration first, and then Choice could resort to judicial proceedings to recover damages awarded by the arbitrator. This interpretation is inconsistent with the contractual language referring to "moneys owed . . . *under this Agreement*," J.A. 20 (emphasis added), which describes debts arising from the Agreement rather than debts imposed by judicial or arbitral judgment. Moreover, under BSR's interpretation, the collection exemption applies only after claims have already been arbitrated; this is not a plausible reading of a phrase designed to exclude certain claims from arbitration.

Choice, by contrast, favors an extremely broad reading of the collection exemption. According to Choice, the exemption excludes from arbitration all claims (by Choice) seeking monetary damages. Given the opportunity at oral argument to identify claims that *would* be arbitrable, counsel for Choice was able to offer only two examples— demands for specific performance and actions for replevin. Choice's interpretation is intuitively unsatisfying, however, because most breach of contract claims seek monetary relief; consequently, most breach of contract claims by Choice would be exempt from arbitration, notwithstanding that the arbitration clause expressly embraces "any controversy or claim relating to . . . the breach of this Agreement." *Id.* Our discomfort with Choice's interpretation is heightened by the fact that a separate exemption within the arbitration clause excludes certain equitable actions brought by Choice to arrest "violation[s] of this Agreement." *Id.* Thus, the interpretation urged by Choice effectively transforms the arbitration provision into a unilateral commitment by BSR to arbitrate its claims, while claims by Choice are subject to judicial determination. We are reluctant to give the arbitration provision this effect, as the structure of the provision does not imply such an imbalance in its application.

At best, Choice's construction offers a minimally plausible alternative to the interpretation we set forth above and thereby renders the collection exemption ambiguous. To resolve this ambiguity, we resort to three interpretive guides. First, as noted above, federal policy requires that ambiguities in arbitration clauses be resolved in favor of arbitration. *See Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) ("[W]e may not deny a party's request to arbitrate an issue unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (internal quotation marks omitted)); *see also Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 800 (10th Cir. 1995) (noting that policy favoring broad construction of arbitration clauses compels narrow construction of exceptions to arbitration clauses). Second, when faced with a general rule and enumerated exceptions, we interpret the exceptions narrowly, lest they overwhelm the rule. *See Commissioner v. Clark*, 489 U.S. 726, 739 (1989). Third, any doubts in the interpretation of a contract must be resolved against the drafter—in this case, Choice. *See Bankers Ins.*, 245 F.3d at 321 n.7. These principles uniformly support a narrow reading of the collection exemption and a correspondingly expansive construction of the general arbitration requirement. Accordingly, we reject Choice's interpretation of the collection exemption and adhere to the conclusion that only traditional collection actions are excluded from the arbitration requirement.

## B.

Having determined the scope of the collection exemption, we must now consider the extent to which it applies to Choice's claims. We hold that Choice's effort to recover the affiliation fee is a collection action subject to the collection exemption; the breach of contract claim, however, falls outside the exemption.

The Agreement between Choice and BSR expressly requires BSR to pay the affiliation fee. The fee is part of the contract itself, not a remedy for either party's deviation from the contract. Moreover, the amount of the fee ($25,000) is a sum certain under the Agreement. Thus, Choice's effort to enforce this contractual provision provides a classic example of a collection action. *See Briargate Condo. Ass'n v. Carpenter*, 976 F.2d 868, 869 (4th Cir. 1992) (characterizing suit to compel payment of condominium fees as "collection action"). Accordingly, under the collection exemption, this claim is not subject to arbitration. Furthermore, because this claim is not arbitrable, BSR was not entitled to dismissal of Choice's complaint in its entirety.

We nevertheless vacate the order of the district court because Choice's breach of contract claim is not within the collection exemption and therefore is subject to arbitration. The Agreement provides

for liquidated damages in the event of termination, and Choice specifically invoked this provision in its complaint; thus, the amount of Choice's damage request is, like the affiliation fee, contractually determined. BSR's obligation to pay this amount, however, does not arise from the formation of the contract, but rather from an alleged breach of contract. Because this is not a debt subject to collection, the collection exemption does not apply. By contrast, the general terms of the arbitration clause specifically embrace claims arising from "the breach of this Agreement." J.A. 20. BSR is therefore entitled to arbitration of this issue and to a stay of proceedings while the arbitration takes place.

## IV.

In sum, Choice's complaint is not subject to dismissal, because it contains at least one non-arbitrable claim. However, Choice's breach of contract claim is arbitrable under the Agreement. We therefore vacate the decision of the district court and remand with instructions to stay proceedings on this claim pending arbitration. The court may, in its discretion, stay proceedings on the affiliation fee claim as well. *See Am. Recovery Corp.*, 96 F.3d at 97.

*VACATED AND REMANDED*