**Alfred THOMPSON, Plaintiff,**

v.

**Gary NIENABER, Joseph Musike, and Millennium Validation Services, Inc., Defendants.**

**CIVIL NO. 02–2769 (JBS).**

United States District Court,
D. New Jersey.

Dec. 26, 2002.

Matthew S. Wolf, Wolf & Booth, LLC, Mount Laurel, NJ, for Plaintiff.

Peter L. Masnik, Kalikman & Masnik, Haddonfield, NJ, and James S. Green, Seitz, Van Ogtrop & Green, P.A., Wilmington, DE, for Defendants.

## OPINION

SIMANDLE, District Judge.

Presently before the Court is defendants' motion to dismiss plaintiff's action in this Court for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P, for failure to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16. The parties do not contest that they are subject to a binding arbitration agreement that covers this dispute. Plaintiff, however, argues that the agreement does not divest this Court's subject matter jurisdiction to consider equitable issues raised in the arbitrable dispute. For the reasons that follow, this Court finds that its equitable jurisdiction in arbitrable disputes is limited to the consideration of claims for temporary injunctive relief pending arbitration. Because plaintiff has not sought such temporary injunctive relief in this action, this Court will grant defendants' motion to dismiss.

## I. BACKGROUND

In 1998, plaintiff Alfred Thompson, defendant Gary Nienaber, and defendant Joseph Musike were all employed by Fluor Daniel Enterprises and decided to capitalize on their knowledge of regulatory compliance and validation services for the pharmaceutical industry by forming their own corporation. (Compl.¶¶ 7–9.) They named their corporation Millennium Validation Services ("MVS") and incorporated it in the State of Delaware. (*Id.* ¶ 9.) Thompson and Nienaber continued working for Fluor Daniels, but Musike left and became the first MVS employee. (*Id.* ¶¶ 10–11, 18.)

MVS grew and after about a year, Thompson, Nienaber, and Musike decided to enter into a shareholder agreement for MVS. (*Id.* ¶ 12.) Each was issued 500 shares. (*Id.* ¶ 15.) The agreement included an arbitration provision which stated:

15. Disputes to Terms or Provisions of This Agreement

All disputes arising from this Agreement which cannot be resolved through action of the Board of Directors or by majority vote of the Stockholders shall be resolved by mediation in accordance with the mediation rules of the American Arbitration Association ("AAA") and, if mediation fails, then by binding arbitration with a panel of three arbitrators in accordance with the Commercial Arbitration rules of the AAA. The arbitrators' written award shall state which party is in breach of this Agreement and the amount of money to be awarded, if any, and the terms of payment. The sole exception shall be the right of the Company to seek an injunction and/or damages against any departing Shareholder

violating Paragraph 8 or 22 above.[1] (*Id.*, Ex. A, ¶ 15.)

As the company continued to grow, the shareholders decided that Nienaber should also leave Fluor Daniels to join MVS as an employee. (*Id.* ¶ 18.) By the end of 2000, with defendants Musike and Nienaber working for MVS and plaintiff Thompson still working for Fluor Daniels at its Ireland site, MVS had exceeded 3 million dollars in revenue. (*Id.* ¶¶ 18, 19.)

During 2001, defendants Nienaber and Musike approached plaintiff Thompson and asked to buy his shares. (*Id.* ¶ 27.) Thompson agreed to meet with them and discuss the proposal. (*Id.* ¶ 29.) At the meeting on November 12, 2001, Thompson says that Nienaber and Musike gave him a document that, if he signed, would have caused him to alienate his shares immediately without knowing the consideration that he would be paid for them and in a way that would not be compliant with the shareholder agreement. (*Id.*) As a result, Thompson says, he refused to sign the document and left the meeting. (*Id.* ¶¶ 30, 31.) The parties met again on November 20, 2001 and Thompson says he again refused to sign the document because he did not know the value of his shares and left the meeting. (*Id.* ¶¶ 34–37.)

Thompson then received a letter dated November 20, 2001 stating that "you are no longer a director, officer or employee of Millennium," (*id.*, Ex. C), a copy of the minutes of the November 20, 2001 meeting stating that "[i]t was determined that Mr. Thompson . . . shall be compelled to withdraw from the Corporation," (*id.*, Ex. D), and a document indicating the consent of the shareholders to his termination with cause, (*id.*, Ex. E). Each document was signed by defendants Nienaber and Musike and indicated two reasons for the action. First, the Board of Directors had decided "that your employment (and your continued employment) by Fluor Enterprises has created and continues to create a conflict of interest in violation of Section 8 of the Agreement."[2] (*Id.*, Ex. C at 1, Ex. D. ¶ 1, Ex. E ¶ 1.) Second, the Board decided that Thompson was:

unwilling[ ] to perform agreed-upon and promised duties and responsibilities to Millennium in that you (a) refused to become a full-time or other substantial employee of Millennium; (b) refused to become involved in the day-to-day operations of Millennium; (c) refused to become involved in the direct marketing of Millennium; and (d) refused to disclose or reveal your involvement in Millennium in order to foster and develop the good will of Millennium.

(*Id.*, Ex. C at 1–2, Ex. D ¶ 2, Ex. E ¶ 2.)

Thompson, through his attorney, requested mediation with the AAA on March 11, 2002 in accordance with the terms of the shareholder agreement. (*Id.* ¶ 40.) Carole Green, Esquire was appointed as

---

1. For the terms of ¶¶ 8 and 22, see notes 2 and 3, *infra.* This exception does not apply to the present dispute because the relief is sought by Thompson and not by "the Company."

2. Section 8 of the shareholder agreement provides:

Shareholders agree not to engage in outside business activities which may tend to interfere with the activities or clients of the Company as determined by the Board of Directors. No Shareholder shall divert away from the Company, whether or not for Shareholder's personal benefit, or for the benefit of an organization in which Shareholder has a material financial interest, any corporate opportunity arising during his period of Shareholding which relates or pertains to the Company's business unless the Board of Directors of the Company has determined not to pursue such opportunity.

AAA mediator for the case and on May 3, 2002, she conducted an initial telephone conference with the attorneys. (*Id.* ¶¶ 41, 43.) Mediation was scheduled for August, 2002. (*Id.*)

Meanwhile, on May 6, 2002, plaintiff Thompson delivered MVS a demand for access to its records, which was denied on May 10th. (*Id.* ¶¶ 44, 49.) By letter dated May 8, 2002, MVS made a offer to purchase Thompson's shares for $115,643.00, but withdrew the offer on June 7, 2002. (*Id.* ¶¶ 45, 60.) On May 15, 2002, Thompson left Fluor Daniels and joined Global Turnkey Systems. (*Id.* ¶¶ 52, 53.) Counsel for MVS wrote to Global Turnkey to advise that Thompson's employment with them was in violation of the shareholder agreement's covenant not to compete.[3] (*Id.* ¶ 53.)

On June 10, 2002, Thompson filed the complaint with this Court alleging that defendants Nienaber, Musike, and MVS made false representations and violated the covenant of good faith and fair dealing by failing to mediate in good faith, by making a "take-it-or-leave-it" offer for plaintiff's shares and withdrawing it in spite of the pending mediation process, by failing to pay plaintiff the value of his shares, and by establishing an entity called Millennium Ireland. He seeks injunctive relief and compensatory and punitive damages, attorneys fees and costs. On June 25, 2002, defendants filed the present motion to dismiss, arguing that this Court does not have subject matter jurisdiction because of the arbitration provision in the shareholder agreement.[4]

## II. DISCUSSION

### A. Standard for Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

When considering a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the court must accept as true all material allegations of the complaint and construe that complaint in favor of the non-moving party. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The court's focus must not be on whether the factual allegations would entitle the plaintiff to relief, but instead should be on whether this Court has jurisdiction to hear the claim and grant relief. *New Hope Books, Inc. v. Farmer*, 82 F.Supp.2d 321, 324 (D.N.J.

3. Section 22 of the shareholder agreement states:

> In the event a shareholder leaves the company, the departing Shareholder shall not, for a period of one year from the date or withdrawal, directly or indirectly perform or in any manner assist in the rendering of validation or engineering services on or in connection with any project, commission or client for which validation or engineering services were being provided by the Company at the date of withdrawal or at any time during the immediately preceding 12–month period, or for any person, entity, firm or project site located within or having an address within a 200 mile radius of any Company office at the time of the departing Shareholder's withdrawal.

(*Id.* Ex. A at 10.) MVS alleged that Thompson was violating the clause because Global Turnkey had an agreement with B. Braun for consulting services within 200 miles of the MVS Delaware office. (*Id.* ¶ 55.)

4. Since the present motion to dismiss was filed, defendant MVS filed an action against plaintiff Thompson in the Delaware Court of Chancery seeking to enforce the noncompete provisions of the shareholder agreement. The case was removed to the United States District Court for the District of Delaware on August 22, 2002, where MVS moved to stay the action and Thompson filed a motion to transfer the case to this Court. The Honorable Gregory M. Sleet denied Thompson's motion to transfer and granted MVS's motion to stay the proceeding until this Court determines whether it has jurisdiction over this matter.

2000). To determine this, the Court can find facts based on affidavits or materials submitted to the Court. *Id.*

## B. Analysis

Defendants argue that this Court does not have subject matter jurisdiction because the parties entered a mandatory arbitration agreement. (Defs.' Br. at 4.) Plaintiff argues that the Court must deny the motion to dismiss because arbitration agreements do not affect a court's jurisdiction to provide equitable relief. (Pl.'s Br. at 7.) The motion raises two questions, one procedural—whether the court can dismiss a motion for failure to arbitrate when the parties have not filed a motion to compel arbitration, and one substantive—whether the court has jurisdiction over all equitable matters in a arbitrable dispute. This Court finds that it can consider the present motion to dismiss because all parties were aware that arbitrability was at issue and finds that, under the parties' arbitration agreement, the Court does not have jurisdiction to consider all equitable matters in this arbitrable dispute. Instead, this Court only has jurisdiction to consider

equitable claims for temporary injunctive relief pending arbitration, which plaintiff has not sought here. Therefore, this Court will grant defendants' motion to dismiss.

### 1. Procedural sufficiency of motion to dismiss for lack of subject matter jurisdiction for failure to arbitrate

■ The parties agree that the Federal Arbitration Act, ("FAA"), 9 U.S.C. §§ 1–16, governs their agreement to arbitrate.[5] Under the FAA, if a party brings a claim in federal court that is within the scope of a binding arbitration agreement, another party can move the court to compel arbitration and to stay the proceeding until arbitration is completed. 9 U.S.C. §§ 3,[6] 4;[7] *see also Seus v. John Nuveen & Co.,* 146 F.3d 175, 178–79 (3d Cir.1998). If all of the claims involved in the action are arbitrable, the court may dismiss the federal action instead of staying it. *See Blair v. Scott Specialty Gases,* 283 F.3d 595, 600–02 (3d Cir.2002); *Seus,* 146 F.3d at 179.

5. The FAA was enacted in 1925 to ensure that arbitration agreements would be enforceable to the same extent as other contracts. 9 U.S.C. § 2 provides, in pertinent part:

   A written provision in ... a contract ... to settle by arbitration a controversy arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract.

6. Section 3 of the FAA provides, in part:

   If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action....

7. Section 4 of the FAA provides, in part:

   A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court which, save for such agreement, would have jurisdiction under Title 28, in a civil action ... of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in a manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall make an order directing the parties to proceed with arbitration in accordance with the terms of the agreement ...

Here defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P., instead of filing a motion to compel arbitration pursuant to 9 U.S.C. § 4. The initial issue raised, therefore, is whether the Court can dismiss a claim for failure to arbitrate on a motion to dismiss as it could if the parties had filed a motion to compel arbitration.

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction contests the court's authority to hear and decide the case, so is typically used when the claim does not involve a federal question and there is no diversity of citizenship between the parties or other basis for the federal court to exercise its limited jurisdiction. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil 2d* § 1350 (2d ed.1990). It is a flexible rule, though, that "often serv[es] as a vehicle for raising various residual defenses" such as failure to exhaust administrative remedies, lack of standing, or sovereign immunity. *Id.* (citing cases).

The Eastern District of Pennsylvania, however, found that a Rule 12(b)(1) motion cannot be used to assert that a party failed to arbitrate. *Strick Corp. v. Cravens Homalloy (Sheffield) Ltd.*, 352 F.Supp. 844, 848 (E.D.Pa.1972); *see also West v. Merillat Indus., Inc.*, 92 F.Supp.2d 558, 561 (W.D.Va.2000) (finding that "appropriate procedural mechanism to enforce and arbitration agreement is a motion to compel, not a motion to dismiss"). The Western District of Virginia grounded its finding in the language of the Act which states that a party should "petition" the court "for an order directing that such arbitration proceed" and in the need for a motion that "afford[s] the plaintiff an opportunity to respond appropriately." *West*, 92 F.Supp.2d at 561.

Many courts have interpreted the FAA's procedural requirements more leniently. *See Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 733 (5th Cir.1987) (stating that "[t]he procedural requirements of 9 U.S.C. § 4 ... are permissive, not mandatory"). The Act itself does not state that a document entitled "motion to compel" must be filed to trigger the protections of the Act, but states that the party must "petition" the court for an order directing arbitration to proceed. Courts, therefore, have allowed the party to "petition" the court through the use of a motion to dismiss for lack of subject matter jurisdiction. The Fourth Circuit held that to require a motion to compel instead of a motion to dismiss was "hypertechnical" and would undermine the "liberal federal policy favoring arbitration agreements." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The court found that as long as the party made clear that it was seeking enforcement of the arbitration clause in its motion to dismiss, it had sufficiently "invoke[d] the full spectrum of remedies under the FAA." *Choice Hotels*, 252 F.3d at 710. Other courts have also considered Rule 12(b)(1) motions to dismiss for failure to arbitrate. *See, e.g. Morrison v. Colo. Permanente Med. Group*, 983 F.Supp. 937, 944 (D.Colo. 1997); *Hunt v. Up North Plastics, Inc.*, 980 F.Supp. 1046, 1047 (D.Minn.1997); *Trustees of Columbia Univ. v. Local 1199*, 805 F.Supp. 216, 217 (S.D.N.Y.1992).

This Court finds that all parties to the present dispute were fully aware that this motion dealt with the arbitrability of their dispute and had the opportunity to respond appropriately. Defendants clearly argued that "[g]iven the broad arbitration clause in the Agreement ... there is no doubt that the arbitration clause governs

this dispute and this Court lacks jurisdiction over this matter." (Defs.' Br. at 6.) Counsel for plaintiffs responded that this Court should handle the matter "regardless of whether an alternative dispute process has been initiated." (Pl.'s Br. at 7.) Were this Court to dismiss the action because the wrong document was filed, the defendants would undoubtedly file a motion to compel arbitration and the parties would present the same arguments as presented here. Therefore, this Court will avoid such a "hypertechnical" ruling that would inevitably lead to duplicative litigation and this Court will presently consider the arbitrability of this dispute.

### 2. Jurisdiction over equitable matters in arbitrable disputes

The substantive issue presented to this Court on this motion to dismiss is whether this Court has jurisdiction over all equitable issues involved in an arbitrable dispute. The Third Circuit held that a "district court has subject matter jurisdiction to entertain a motion for preliminary injunctive relief in a dispute that the parties agree is arbitrable." *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811–12 (3d Cir.1989). Plaintiff, therefore, argues that this Court has jurisdiction to entertain motions for equitable relief in arbitrable disputes, so has jurisdiction over the present dispute where he seeks equitable relief. This Court, however, does not have such broad jurisdiction; instead, the Court only has jurisdiction to consider equitable claims for temporary injunctive relief pending arbitration.

The reason that this Court's jurisdiction is limited is because it is well-settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The "unmistakably clear congressional purpose" behind the FAA is "that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Courts, therefore, cannot delve into the merits of an arbitrable dispute; their jurisdiction is limited to staying the civil action and compelling the parties to arbitrate. *John Hancock Mutual Life Ins. Co. v. Olick*, 151 F.3d 132, 136–37 (3d Cir.1998).[8] However, the majority of circuits, including the Third Circuit, have carved a limited exception to this general rule by providing the court with jurisdiction to consider the merits of the dispute for the sole purpose of determining whether temporary injunctive relief is necessary pending the arbitration of the dispute.[9] *Ortho*, 882 F.2d at 811–12; *see also*

---

8. Courts also have jurisdiction when enforcement of an arbitration award is sought. *Olick*, 151 F.3d at 136. Upon a motion to enforce an award, the court's jurisdiction is limited to confirming, vacating, or modifying the award pursuant to the narrow grounds available in 9 U.S.C. §§ 9–11.

9. To obtain preliminary injunctive relief in an arbitrable case, the party must demonstrate: (1) that it is likely to succeed on the merits in the arbitration proceeding; (2) that it will be irreparably harmed in the meantime in a manner that threatens to render the arbitration proceeding meaningless if the court does not grant preliminary injunctive relief pending the outcome of the arbitration proceeding; (3) that the possibility of harm to ... other interested persons if injunctive relief is granted would not outweigh the harm it will suffer if injunctive relief is denied; and (4) that the injunction it seeks will serve the public interest.

Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 47–49 (1st Cir.1986) (citing cases). The goal of the temporary injunctive relief is to preserve the *status quo* until the parties are able to arbitrate the merits of their dispute. *Ortho*, 882 F.2d at 813.

Justice White, in his 1985 dissent from the Supreme Court's denial of certiorari review, stated that "[t]he question presented by this case—whether the Arbitration Act bars a court from issuing a preliminary injunction in a case subject to arbitration—is one that has divided the state and federal courts." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum,* 469 U.S. 1127, 1129, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985). The division is marked by two arguments: (1) that injunctive relief is needed pending arbitration so that the parties can engage in meaningful arbitration; without it one party can irreparably injure the interests of the other and turn the arbitration into a "hollow formality;" and (2) that injunctive relief should not be permitted because the parties bargained away their right to have the court consider the merits of their dispute. *See Ortho,* 882 F.2d at 811. The Third Circuit has decided that injunctive relief should be allowed because:

> this approach reinforces rather than detracts from the policy of the Arbitration Act.... We believe that the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto,* the meaningfulness of the arbitration process.

*Ortho,* 882 F.2d at 812 (quoting *Teradyne,* 797 F.2d at 51).

The reasoning behind the temporary injunctive relief exception, therefore, is focused on the ultimate arbitration of the dispute. The Third Circuit has not opened the door to allow the court to hear all equitable disputes, as plaintiff has argued. Instead, it has "consistently admonished the courts 'to exercise the utmost restraint and to tread gingerly before intruding upon the arbitral process.'" *Olick,* 151 F.3d at 136 (quoting *Lewis v. Am. Fed'n of State, County and Municipal Employees,* 407 F.2d 1185, 1191 (3d Cir.1969)). Therefore, this Court finds that the Third Circuit's holding in *Ortho* is limited to the granting of temporary injunctive relief in an arbitrable dispute for the period when the parties await arbitration of their dispute.

Here, plaintiff seeks equitable relief in the form of a declaratory judgment stating that defendants' attempts to enforce the restrictive covenant against him are prohibited and establishing the value of his shares, a permanent injunction restraining defendants from enforcing the restrictive covenant, and other affirmative injunctive relief to compel defendants to comply with the shareholder's agreement and to require defendants to produce documents for inspection and account for their transactions, as well as relief in the form of compensatory and punitive damages and attorneys' fees and costs. (Compl. at 12–13.) While, plaintiff does state in Count I of the Complaint that he seeks "equitable relief against Nienaber, Musike and MVSI in the form of restraints, temporary, preliminary and permanent," his focus throughout the complaint and his prayer for relief is not on protecting his interests until he can arbitrate but is on obtaining an ultimate resolution of his dispute with this Court. As noted, plaintiff has filed no motion for temporary restraints or for a preliminary injunction pending arbitration. He has not disputed the validity of the

arbitration agreement, but he still seeks permanent relief in this Court instead of in arbitration. Even if plaintiff is frustrated with the arbitral system, (*see* Pl.'s Br. at 5 stating "defendants have not mediated in good faith"; *id.* at 6 stating "defendants are 'stone walling' the plaintiff"), this Court does not have jurisdiction to consider his claims for legal or equitable relief outside the arbitral system given the parties' broad-based arbitration agreement. Therefore, this Court will grant defendants' motion and will dismiss plaintiff's complaint.

## III. *CONCLUSION*

For the foregoing reasons, the Court will grant defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P.