980 So.2d 780 (2008)
LIMOUSINE LIVERY, LTD.
v.
A AIRPORT LIMOUSINE SERVICE, L.L.C.
No. 2007-CA-1379.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 2008.
*781 John J. Steger IV, Serena E. Pollack, Pro Hac Vice, Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P., New Orleans, LA, for Plaintiff/Appellant.
George D. Fagan, Marc E. Devenport, Leake & Andersson, L.L.P., and Frank J. D'Amico, Jr., Law Offices of Frank J. D'Amico, Jr., APLC, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME).
PATRICIA RIVET MURRAY, Judge.
This is an injunction action. The primary issue in this case is whether the trial court erred in dismissing this action based on its findings of no irreparable injury and that pursuant to the agreement between the parties the dispute should be decided by arbitration. For the reasons that follow, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On December 12, 2002, A Airport Limousine Service, L.L.C. ("A Airport") was created "for the purpose of conducting limousine services in conjunction with the New Orleans Airport Limousine contract" and to "operate for a term of five years terminating on December 15, 2007." Limousine Livery, Ltd. ("Limousine Livery") was one of the nine original members of A Airport and a signatory to the December 12, 2002 Operating Agreement pursuant to which A Airport was created. Rose Clark, who co-owned with her husband all of the outstanding stock in Limousine Livery, signed the Operating Agreement as Limousine Livery's representative.
The Operating Agreement contains two significant provisions relevant to the instant dispute: a right of first refusal and an arbitration provision. The right of first refusal, which is set forth in Section X of the Operating Agreement, provides that "[n]o member without the consent of the BOD [(board of directors)] and a two-thirds vote from the other members, shall: sell . . . their interest" and that "[t]he members have a right of first refusal." The arbitration provision, which is set forth in Section XV of the Operating Agreement, provides:
"The members shall submit any dispute they may have relative to any issue any member feels may be significant and is in dispute, to an arbitrator. The arbitrator will be determined at the time of the dispute. The parties agree to be bound by any decision of the arbitrator. Members have complete and final determination of all other matters."
On September 30, 2003, the members, including Limousine Livery, amended the Operating Agreement to provide:
"A two-thirds majority of the members of the L.L.C. may vote to suspend any member's right of participation in the L.L.C., including but not limited to such member's right to provide Limousine services in connection with the L.L.C.'s operations . . . and exercise any other rights of membership described in the Operating Agreement. A two-thirds majority of members of the L.L.C. may vote to suspend any member for a period up to sixty days upon a finding by the two-thirds majority of the members of the L.L.C. in their sole discretion that *782 there is reasonable cause to suspend the membership rights and obligations of any such member under the Operating Agreement or any amendment thereto. Prior to the end of any period of suspension voted upon by the members of the L.L.C. regarding any member, the non-suspended members of the L.L.C. shall have the right to conduct such investigations or engage in such other activities as may be reasonably necessary in order to determine whether the suspended member shall be terminated from the L.L.C. or reinstated."
On June 14, 2006, a third party purchased all the outstanding stock in Limousine Livery from Rose Clark and her husband.
On May 24, 2007, A Airport, through six of its seven remaining members,[1] acting pursuant to the September 30, 2003 amendment to the Operating Agreement, voted to suspend Limousine Livery's membership rights for a period of sixty days. This document reads: "a two-thirds majority of the members of the L.L.C. hereby finds and agrees that there is reasonable cause to suspend the membership rights and obligations of Rose Clark/Limousine Livery, Ltd. for a period of sixty days from the date of this document." The principal basis for the suspension was the sale of the stock in Limousine Livery to a third party without complying with the right of first refusal provision.[2]
On July 19, 2007, the Operating Agreement was amended to provide that "[a] two-thirds majority of the non-suspended members of the L.L.C. may vote to extend the suspension period of any suspended member by a period of forty-five (45) days in order to continue the investigation into the matter that caused such suspension and/or to bring all incurred obligations of the suspended member current." Based on that amendment, the temporary suspension and investigation of Limousine Livery were continued for a period of up to forty-five days from that date, July 19, 2007, in order to determine whether to terminate or reinstate it.[3]
On August 23, 2007, five of the non-suspended members sold their interests in A Airport to the only other non-suspended member, A Confidential Transportation, Inc. ("A Confidential"). This sale was approved by one-hundred percent of the non-suspended members. As a result of this sale, A Confidential became the sole non-suspended member. According to the petition, Limousine Livery was not given notice of this sale.
*783 On August 28, 2007, Limousine Livery filed a petition for injunctive relief. In its petition, Limousine Livery alleged that A Airport "violated the terms of the Operating Agreement, and amendments thereto, by suspending Limousine Livery, Ltd. from membership without reason or cause." The relief it sought was to enjoin A Airport for "continuing the unauthorized, improper and prohibited temporary suspension of its membership because this unlawful temporary suspension of membership violates the petitioner's rights as a member." In the petition, Limousine Livery sought not only a preliminary injunction, but also a permanent injunction to the same effect.
On August 30, 2007, the trial court denied Limousine Livery's request for a temporary restraining order and set the rule to show cause as to why a preliminary injunction should not be granted for hearing on September 6, 2007. At the hearing on that date, it was established that A Airport, acting through its sole non-suspended member, A Confidential, terminated Limousine Livery's membership on August 30, 2007.
On September 10, 2007, the trial court rendered judgment findingbased on "the pleadings, affidavits, evidence and arguments of counsel"that Limousine Livery failed to demonstrate irreparable harm or injury and that the disputes between the parties should be determined by arbitration as required by the Operating Agreement. The trial court thus dismissed without prejudice Limousine Livery's injunctive action. The instant appeal followed.

DISCUSSION
The trial court's judgment denying Limousine Livery's request for a preliminary injunction is appealable pursuant to La. C.C.P. art. 3612(C), which provides that "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction." La. C.C.P. art. 3612(C). The right to appeal under Article 3612 is not restricted to judgments granting injunctive relief. Sessions, Fishman & Nathan, L.L.P. v. Salas, 04-1790, p. 6 (La.App. 4 Cir. 5/25/05), 905 So.2d 373, 377 (citing Fabacher v. Hammond Dairy Co., 389 So.2d 87, 89 (La.App. 4 Cir.1980)). An abuse of discretion standard applies in reviewing a judgment denying a preliminary injunction. See FQCPRQ v. Brandon Investments, L.L.C., 05-0793, pp. 7-8 (La.App. 4 Cir. 3/29/06), 930 So.2d 107, 112 (holding that "we will disturb the finding of the trial court only upon a showing of abuse of its great discretion."); LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., 02-0663, p. 3 (La.App. 4 Cir. 11/20/02), 833 So.2d 1010, 1012 (citing A to Z Paper Co., Inc. v. Carlo Ditta, Inc., 98-1417, pp. 8-9 (La.App. 4 Cir. 9/9/98), 720 So.2d 703, 708).
To prevail in the trial court on its motion for preliminary injunction, Limousine Livery was required to establish by prima facie evidence that: (1) the injury, loss, or damage it will suffer if the injunction is not issued may be irreparable; (2) it is entitled to the relief sought; and (3) it will likely prevail on the merits of the case. Hall v. Fertility Institute of New Orleans, 94-1135, p. 4 (La.App. 4 Cir. 12/15/94), 647 So.2d 1348, 1351; Salas, 04-1790 at p. 6, 905 So.2d at 377-78. In this case, the trial court denied the request for a preliminary injunction not only because the first requirementirreparable injuryis not satisfied, but also because the dispute between the parties is within the ambit of the arbitration provision contained in the Operating Agreement. Limousine Livery does not dispute that the arbitration provision is valid; rather, it contends that the *784 arbitration provision does not preclude the court from exercising its equitable power to grant preliminary injunctive relief. It contends that the trial court erred in finding it lacked jurisdiction to entertain its request for preliminary injunctive relief pending arbitration. It further contends that the trial court erred in failing to allow it to present prima facie evidence of irreparable injury. It thus contends that this court should remand for a hearing on the issue of irreparable injury.
In addressing arbitration issues, Louisiana courts have generally looked to the federal jurisprudence interpreting the Federal Arbitration Act ("FAA"). Aguillard v. Auction Management Corp., 04-2804, 04-2857, pp. 25-26 (La.6/29/05), 908 So.2d 1, 18 (noting that "[d]ue to the similarities between our state arbitration provisions and the federal arbitration law [(the FAA)] . . . the federal jurisprudence provides guidance in the interpretation of our provisions.") The FAA is silent on the issue of whether injunction relief is available pending arbitration. The issue of whether a trial court has jurisdiction to grant preliminary injunctive relief when, as in this case, the parties have entered into an enforceable arbitration agreement has split both the state and federal courts. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum, 469 U.S. 1127, 1129, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985) (Justice White dissenting from denial of certiorari) (noting the question of whether the Federal Arbitration Act ("FAA") bars a court from issuing a preliminary injunction in a case subject to arbitration has divided the state and federal courts).
The prevailing federal court view is that there is "some equitable power on the part of the district court to issue preliminary injunctive relief in disputes that are ultimately to be resolved by arbitration." Martin Domke, 1 Domke on Commercial Arbitration § 31.4 (3rd ed.2007) (collecting cases). This view is based on the theory that "injunctive relief is needed pending arbitration so that the parties can engage in meaningful arbitration; without it one party can irreparably injure the interests of the other and turn the arbitration into a `hollow formality.'" Thompson v. Nienaber, 239 F.Supp.2d 478, 485 (D.N.J.2002).[4] The contrary view is that "injunctive relief should not be permitted because the parties bargained away their right to have the court consider the merits of their dispute." Id.
Although the majority view is that preliminary injunctive relief is not incompatible with arbitration, the courts adopting this view have "not opened the door to allow the court to hear all equitable disputes." Thompson, 239 F.Supp.2d at 485 (rejecting request for declaratory judgment and affirmative injunctive relief compelling compliance with a shareholder agreement based on a broad arbitration agreement between the parties).[5] To the *785 contrary, the majority view is that courts should "tread gingerly before intruding upon the arbitral process." Id.
Assuming that preliminary injunctive relief is available, we find the requirements for granting such relief would not be satisfied under the circumstances presented here. As the trial court found, Limousine Livery failed to establish that it would suffer irreparable injury if a preliminary injunction was not issued. Irreparable injury means "[a]n injury that cannot be adequately measured or compensated by money and is therefore often considered remediable by injunction." Bryan A. Garner, Black's Law Dictionary, 801 (8th ed.2004); see also Ellis Const., Inc. v. Vieux Carre Resort Properties, L.L.C., 05-1109 (La.App. 4 Cir. 6/7/06), 934 So.2d 206. According to an affidavit submitted by Limousine Livery to the trial court, the irreparable injury that it will suffer if injunctive relief is not granted is the result of A Airport preventing it from:
"(1) exercising its right of first refusal, under the Operating Agreement, for sale of the membership interest(s) in A. Airport Limousine Service, L.L.C. that were sold during its termination; and (2) impinging its constitutional right related to freedom of contract by preventing it from having discussions with airport personnel to provide limousine services."
At the hearing, the trial court alluded to the possibility that if there was irreparable injury, preliminary injunctive relief may have been available, stating: "I can see the instance when arbitration  the very process of arbitration could not afford someone the immediate relief that might be necessary when there is irreparable harm. For instance, buildings coming down tomorrow."[6] The trial court, however, concluded that this is not such a case. We agree.
Limousine Livery alternatively asserts that it was deprived of the opportunity to present prima facie evidence of its irreparable injury because the trial court erroneously found it lacked jurisdiction. The trial court, contrary to Limousine Livery's assertion, did not find it lacked jurisdiction to decide the question of whether there was irreparable injury so as to justify injunctive relief; rather, it found it lacked jurisdiction to decide the merits of the dispute because the parties had agreed to arbitrate their disputes. Moreover, as A Airport points out, the record reflects that the trial court considered the documents and affidavits submitted by the parties and allowed Limousine Livery's counsel to explain at the hearing the basis for its claim of irreparable injury. Limousine Livery thus was not deprived of an opportunity to establish irreparable injury.
The second reason injunctive relief is unavailable in this case is that the relief *786 Limousine Livery seeks is not to prevent future acts but to undo past act-its temporary suspension and the sales of the other members' interests to A Confidential. Undoing past acts is not the proper subject of a preliminary injunction. An injunction cannot be used to correct a "consummated wrong" or enjoin a "fait accompli." Bristol Steel and Iron Works, Inc. v. State, Dep't of Transp. and Dev., 507 So.2d 1233, 1235 (La.1987) (citing Verdun v. Scallon Bros. Contractors, Inc., 263 La. 1073, 1078, 270 So.2d 512, 513 (1972)).[7]
The final reason injunctive relief is unavailable in this case is that the relief Limousine Livery seeks, although styled a request for a preliminary injunction, is actually a mandatory injunctionit seeks to compel A Airport to reinstate it as a member and to undo the sale of the other members' interests to A Confidential. A mandatory injunction, which is so named because it mandates taking a certain action, cannot be granted without a hearing on the merits. Maestri v. Destrehan Veterinary Hospital, Inc., 554 So.2d 805, 808 (La.App. 5 Cir.1989). Because the merits of the dispute between Limousine Livery and A Airport are governed by the arbitration provision, the granting of a mandatory injunction is precluded.[8]
In sum, the trial court did not abuse its discretion in denying Limousine Livery's request for a preliminary injunction. Nor did the trial court err in dismissing the injunction action based on the binding arbitration provision.[9]

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Sometime between 2002 and 2007, two of the original nine members were terminated, leaving only seven members. Also, on August 29, 2005, Hurricane Katrina struck the New Orleans area. According to an affidavit submitted by A Airport, it has not conducted business at the New Orleans Airport since August 27, 2005, when it ceased operations due to the hurricane.
[2] A Airport's position is that both the individual signatory (Rose Clark) and the entity on whose behalf each individual signed (Limousine Livery) are "members" of the L.L.C. and thus subject to the right of first refusal provision. Limousine Livery's counter position is that only the entities (Limousine Livery) are "members" and thus Rose Clark's sale of her stock in the entity to a third party was not subject to the right of first refusal provision of the Operating Agreement. This issue is not before us.
[3] At that time, the Operating Agreement was further amended to appoint Jamie B. D'Amico, the representative of another entity-member (A Confidential Transportation, Inc. ("A Confidential")), as the sole member with the right and authority to contact the New Orleans Airport on behalf of A Airport and that all other members are to cease and desist and are precluded from contacting the Airport on behalf of A Airport.
[4] Consistent with the majority view, the Revised Uniform Arbitration Act includes the following provision:

Before an arbitrator is appointed and is authorized and able to act, the court, upon [motion] of a party to an arbitration proceeding and for good cause shown, may enter an order for provisional remedies to protect the effectiveness of the arbitration proceeding to the same extent and under the same conditions as if the controversy were the subject of a civil action.
[5] The courts that have recognized a trial court's jurisdiction to grant preliminary injunctive relief pending arbitration generally have imposed a time limitation on such relief, limiting it until the arbitration commences. According to A Airport's representation in its brief, the arbitration in this case was scheduled to commence in February 2008. We also note that the Operating Agreement by its terms was to expire on December 17, 2007, and the extension of the suspension and investigation into whether Limousine Livery should be reinstated or terminated was only for forty-five days from July 19, 2007. Given these time limits, it appears the requested preliminary injunctive relief may now be moot. Nonetheless, we find it appropriate to decide the issues presented on this appeal since we cannot determine for certain from the record that the dispute is moot.
[6] The trial court's statement is consistent with the jurisprudence which has recognized that "there are some situations in which judicial intervention may be necessary, such as where irreparable injury would be caused by compelling an arbitration or where the resulting [arbitration] award would be unenforceable, including when the matter in question is inarbitrable or against public policy." Frank L. Maraist, IA Louisiana Civil Law Treatise, Civil Procedure  Special Proceedings § 13.5 (citing Landry v. William B. Reily & Co., 524 So.2d 750 (La.App. 3 Cir. 1988), and Ronald A. Coco, Inc. v. W.E. Parks Lumber Co., 331 So.2d 515 (La.App. 2 Cir. 1976)).
[7] Although Limousine Livery also sought to enjoin A Airport from taking any action in violation of the Operating Agreement, to implement that request would require the granting of declaratory relief construing the Operating Agreement. The construction of the Operating Agreement is clearly a matter the parties agreed to submit to arbitration.
[8] Limousine Livery asserts that the same policy reasons applicable to allowing courts to grant preliminary injunctive relief pending arbitration applies to request for mandatory injunctive relief pending arbitration. We disagree. A preliminary injunction functions to maintains the status quo; whereas, a mandatory injunction functions the same as a permanent injunction. Denta-Max v. Maxicare Louisiana, Inc., 95-2128, p. 3 (La.App. 4 Cir. 3/14/96), 671 So.2d 995, 997.
[9] Because A Airport did not file an answer to Limousine Livery's appeal, we do not reach the issue it raises regarding sanctions against Limousine Livery for filing this action under La. C.C.P. art. 863(D).