|! LOMBARD, J.,
Dissenting.
The only issue in this case is the monetary compensation due to the plaintiff from the defendant for work and services rendered, i. e., the remaining outstanding principal ($547, 386.24) that the plaintiff claims is due for work and services pursuant to its subcontract with the defendant. Because an injunction may be issued only “where irreparable injury, loss, or damage may otherwise result to the applicant ....”[1] and irreparable injury is an injury that “cannot be adequately measured or compensated by money,” [2] injunctive relief is inappropriate in this case.
*1151 Moreover, the likelihood of the plaintiff prevailing on the merits is questionable.[3] Consent to a contract does not require signature on a written form but, rather, may be established by actions clearly indicative of consent.[4] Consent may be vitiated by error, but “only when it concerns a cause without which the 12obIigation would not have been incurred and that cause was known or should have been known to the other party.[5] Although a contract is relatively null when a party did not give free consent at the time the contract was made, actions of the party may confirm a contract that is a relative nullity.[6] In this case, the plaintiff does not dispute that (1) the subcontract it signed on March 11, 2008, contained the disputed arbitration provision; (2) it was only on March 19, 2008, that the subcontract was sent to attorney Marcus L. Giusti for review; (3) the plaintiff began work on the project on March 31, 2008, with the arbitration provision in place; (4) the plaintiff worked on and received payment for work performed through the summer; (5) after a dispute arose between the parties over work performance and payment arose, the plaintiff sought mediation as required by the subcontract; and (6) the plaintiff fully participated in arbitration proceedings between January and July 2009, including selection of the arbitrator on April 14, 2009, the initial arbitration conference on May 19, 2009, and compliance with the scheduling order in anticipation of the arbitration scheduled for September 2009. Moreover, according to the documents submitted by the plaintiff, on April 1, 2008, (after the plaintiff began work on the project) Ms. Bourgeois (executive assistant in plaintiff’s employ) sent an email to Mr. Guidry (executive of the plaintiff company) stating that an employee of the defendant told her that taking out the section of the subcontract pertaining to arbitration and mediation would “defect their contract” and could not be taken out. Shortly thereafter, Mr. Gui-dry sent an email to Mr. Giusti stating, “You will probably need to talk to [defendant employee] to see if his K with the state is to be arbitrated and mediated.” Mr. Giusti responded by email that the defendant’s contract with the state “is a public contract and thus there is no arbitration agreement that I am aware of.” The next day (April 2, 2008), Mr. Guidry sent an email to Mr. Giusti asking whether a “complete copy” of the |aprimary state contract should be requested to see if it conflicted with the subcontract.” On April 3. 2008, Mr. Giusti sent the following response:
.... I believe that they have sent this and it is a standard public contract that has no mediation or arbitration provisions. Although it does reference outside specs and drawings which I have not seen, I believe it does not contain a like mediation and arbitration clause. I haven’t researched the issue but I assume any such clause would be illegal and unenforceable against the State. The State would not want to subject itself to binding arbitration, (emphasis added)
*1152 Accordingly, the arbitration provision in the subcontract became a point of discussion only after the plaintiff signed the subcontract and began work under the terms of subcontract and, in any event, the plaintiff was advised by its own legal counsel that the state contract did not contain an arbitration clause. The plaintiffs suggestion that it was induced into agreeing to the arbitration provision by the defendant’s representation in subcontract negotiations that its primary contract with the State required subcontracts to contain arbitration provision is refuted by the documents in the record. Specifically, the plaintiff alleges that it did not learn until February 2009 (when the State refused to participate in arbitration) that the arbitration clause in the primary contract had been deleted[7] when the State refused to participate in arbitration proceedings on that basis. However, the February 2009 letter to Mr. Giusti from the State makes no reference to the primary contract with the defendant or an addendum to that contract, only notifying the plaintiff of its refusal to participate in arbitration for jurisprudential reasons. Similarly, the plaintiff provides only a reproduction of a standard form subcontract, not a copy of the actual contract it signed. Finally, the only copy of the state contract in the record does not contain an arbitration clause and there is no copy of the addendum which purportedly deletes the arbitration clause in the state contract. Thus, nothing support the plaintiffs contention that it agreed to the arbitration provision only |4because the defendant purposely misrepresented it as a requirement of the primary contract. Even if an employee of the defendant suggested to Mr. Guidry’s secretary on April 1, 2008 (after the plaintiff signed the subcontract and began work on the project) that the arbitration provision in the subcontract was required by the primary contract, there is no basis for finding that the defendant purposely misrepresented the defendant’s contract with the State. Moreover, even accepting ar-guendo that the plaintiffs are likely to succeed on their claim that their consent was vitiated, as previously noted this lawsuit is about money owed for work performed and the requisite irreparable injury is not present.
For the foregoing reasons, it was error for the trial judge to grant the plaintiffs motion for a preliminary injunction and I respectfully dissent.

. La. Code Civ. Proc. art. 3609 (emphasis added).

. Limousine Livery, Ltd. v. A Airport Limousine Service, L.L.C., 2007-1379, p. 8 (La.App. 4 Cir. 3/12/2008), 980 So.2d 780, 785 (citations and internal quotations omitted); see Historic Restoration, Inc. v. RSUI Indemnity Co., 2006-1178, p. 11 (La.App. 4 Cir. 3/21/07), 955 So.2d 200, 2008 (irreparable harm means that money damages cannot adequately compensate for the injuries suffered and that "injuries cannot be measured by pecuniary standards ”); see also Desire Narcotics Rehabilitation Center, Inc. v. State of La., Dept. of Health & Hospitals, 07-0390, p. 4 (La.App. 4 Cir. 10/17/07), 970 So.2d 17, 20 (to obtain injunctive relief, the petitioner must show that he will suffer irreparable injury in the absence of an injunction and that he is entitled to the relief sought).

.See Hall v. Fertility Institute of New Orleans, 94-1135, p. 4 (La.App. 4 Cir. 12/15/94), 647 So.2d 1348 (to prevail on preliminary injunction, the plaintiff must establish by prima fa-cie evidence that: (1) it will suffer irreparable injury, loss or damage is injunction denied; (2) it is entitled to relief sought; (3) it will likely prevail on the merits of the case).

. La. Civ.Code art. 1927 ("offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent").

. La. Civ.Code art. 1948; La. Civ.Code art. 1949.

. La. Civ.Code art. 2029.

. To the extent that the defendant concedes that the primary contract was modified on May 22, 2008, such modifications clearly cannot be implicated in a misrepresentation that purportedly occurred during the time frame of the subcontract negotiations.