# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CA 0039

HAROLD MARCELL PARKER, JR.

VERSUS

LIVINGSTON PARISH GOVERNMENT

Judgment Rendered: **OCT 0 8 2025**

\* \* \* \* \* \*

On Appeal from the Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket No. 182770

Honorable Brenda Bedsole Ricks, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Tom S. Easterly<br>Peyton T. Gascon<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>Harold Marcell Parker, Jr. |
| Christopher M. Moody<br>Albert D. Giraud<br>Hammond, Louisiana | Counsel for Defendant/Appellee<br>Livingston Parish Government |
| Dannie P. Garrett, III<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant<br>Joseph Erdey |

\* \* \* \* \* \*

**BEFORE:  McCLENDON, C.J., LANIER AND BALFOUR, JJ.**

**McCLENDON, C.J.**

A parish councilmember appeals a trial court judgment that, among other things, found that the parish council violated the Louisiana Open Meetings Law, LSA-R.S. 42:11, *et seq*, at two meetings, vacated actions taken during said meetings, and ordered the councilmember to pay civil penalties. For the reasons that follow, we reverse one of the two civil penalty awards and affirm the judgment in all other respects.

## FACTS AND PROCEDURAL HISTORY

On February 11, 2023, the Livingston Parish Council ("Council") appointed Harold Marcell Parker, Jr. to serve a three-year term on the Livingston Parish Convention and Visitors' Bureau/Tourism Board ("Tourism Board") representing District 9. Mr. Parker's term was set to expire on February 11, 2026.

In January 2024, Joseph Erdey began his term as a councilmember for District 9. On March 14, 2024, the Council met in accordance with an agenda prepared by the Council Clerk. Agenda item 20(a), which Mr. Erdey requested be placed on the agenda, read as follows:

> Board (re)appointments/Resignation(s)
> a. Livingston Parish Convention and Visitors' Bureau/Tourism Board—Billy Taylor/Joe Erdey

At the March 14, 2024 Council meeting, the referenced agenda item was considered and the Council voted 9-0 to remove Mr. Parker from the Tourism Board and appoint Chris Levy, Mr. Erdey's ex-wife, to that position.

Because of concerns that Mr. Parker's removal from the Tourism Board was done improperly, the item was placed on the agenda for the Council's next meeting scheduled for March 28, 2024. In this regard, agenda item 17 read as follows:

> Executive Session: Joseph "Joe" Erdey, Council District 9
> a. Discussion of the character, professional competence, physical and/or mental health of a Livingston Parish Convention and Visitors Bureau Member as per Louisiana Revised Statute RS 42:17(1) and consideration of removal of board member from the Livingston Parish Convention and Visitors' Bureau

At the March 28, 2024 Council meeting, before the Council considered agenda item 17, Mr. Erdey explained that he did not provide the wording for the agenda item and was not questioning Mr. Parker's competence, physical health, or mental health. Rather, Mr.

2

Erdey advised that the issue was "simply about replacing, letting somebody go and putting somebody else" in that position. The Council then proceeded to go into executive session. After the executive session, Councilmember Ricky Goff, who questioned the agenda item, made a motion to reinstate Mr. Parker to the Tourism Board, based on the Council's previous vote to replace Mr. Parker with Ms. Levy at the March 14, 2024 Council meeting. The motion failed on a vote of four yeas, four nays, and one abstention, resulting in Ms. Levy retaining the Tourism Board seat.

On May 1, 2024, Mr. Parker filed the instant action against the Livingston Parish Government.[1] Therein, Mr. Parker sought the following relief: 1) a judgment declaring the actions of the Livingston Parish Government (acting through the Council), including with respect to the agenda and motion to remove Mr. Parker from the Tourism Board, in violation of the Open Meetings Law; 2) a judgment rendering those actions void; 3) a declaratory judgment establishing the Council lacked authority to remove Mr. Parker from the Tourism Board; 4) a preliminary and permanent injunction prohibiting the defendant from taking any further actions to remove Mr. Parker from the Tourism Board; and 5) a money judgment awarding Mr. Parker reasonable attorneys' fees and other costs for the litigation.

Mr. Parker subsequently amended his petition to, among other things, name Mr. Erdey as a defendant. Mr. Parker sought civil penalties for Mr. Erdey's purported "knowing and willful" violations of the Open Meetings Law at the March 14 and 28, 2024, Council meetings.

Following trial on May 29, 2024, the trial court signed a judgment in favor of Mr. Parker and against the Livingston Parish Government and Mr. Erdey, declaring that: 1) the Livingston Parish Government violated the Open Meetings Law because the March 14, 2024, agenda item did not provide "reasonable specificity" as statutorily required and, as such, the Council's action removing Mr. Parker is null and void; 2) the Council violated the Open Meetings Law on March 28, 2024, when it addressed the issue in executive session; and 3) the Council lacked authority to remove Mr. Parker from the Tourism

---

[1] Mr. Parker alleged that the Livingston Parish Government is a body politic with the authority to sue and be sued under the Livingston Parish Home Rule charter, that acts, in part, through the Council.

3

Board. The judgment also enjoined the Council and Mr. Erdey from attempting to enforce the March 14, 2024 Council vote and from taking further action to remove Mr. Parker from the Tourism Board. Further, the trial court ordered Mr. Erdey to pay a $500.00 civil penalty for each of the two Council meetings in which he knowingly and willfully participated, which were conducted in violation of the Open Meetings Law. The trial court additionally awarded Mr. Parker $37,042.26 in attorneys' fees to be paid by the defendants.

Mr. Erdey suspensively appealed the foregoing judgment. The Livingston Parish Government did not appeal.

On appeal, Mr. Erdey assigns ten separate assignments of error, which we have summarized into eight assignments of error for purposes of our analysis.

1) The trial court erred in finding that the Council lacked authority to remove a member of the Tourism Board prior to the expiration of that member's term;

2) The trial court erred in finding that agenda item 20(a) on the March 14, 2024, meeting agenda was not sufficiently specific under the Open Meetings Law, justifying nullification of the Council's vote to replace Mr. Parker with Ms. Levy;

3) The trial court erred in finding that the Council's March 28, 2024 executive session violated the Open Meetings Law;

4) The trial court erred in awarding attorneys' fees for the Open Meetings Law challenge to the March 14 and March 28, 2024 meetings;

5) The trial court erred in finding that Joseph Erdey knowingly and willfully violated the Open Meetings Law on March 14 and March 28, 2024, and imposing a civil penalty of $500.00 for each purported violation;

6) The trial court erred in adjudicating this matter without joining Chris Levy as a party defendant;

7) The trial court erred in rendering both a preliminary and permanent injunction in the same summary proceedings without the express consent of all parties; and

8) The trial court erred in issuing injunctions that were unclear, improper, and applicable to persons who were not parties to the litigation.

**LAW**

Louisiana's Open Meetings Law is codified as LSA-R.S. 42:11, et. seq. The policy behind the law is stated in LSA-R.S. 42:12(A), which provides, in pertinent part: "It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the

4

performance of public officials and the deliberations and decisions that go into the making of public policy." To meet this policy objective, the provisions of the law "shall be construed liberally." LSA-R.S. 42:12(A).

Any person who has been denied any rights conferred by the Open Meetings Law or who has reason to believe that the Open Meetings Law has been violated may institute enforcement proceedings. LSA-R.S. 42:25(C). Any action taken in violation of the Open Meetings Law is voidable by a court of competent jurisdiction. LSA-R.S. 42:24.

In any enforcement proceeding, the plaintiff may seek, and the court may grant any or all of the following forms of relief: a writ of mandamus; injunctive relief; declaratory judgment; judgment rendering the action void as provided in LSA-R.S. 42:24; and/or judgment awarding civil penalties as provided in LSA-R.S. 42:28. LSA-R.S. 42:26(A). If a party who brings an enforcement action under LSA-R.S. 42:25 prevails, the party shall be awarded reasonable attorney's fees and other costs of litigation. LSA-R.S. 42:26(C).

Any member of a public body who knowingly and willfully participates in a meeting conducted in violation of the Open Meetings Law shall be subject to a civil penalty not to exceed five hundred dollars per violation. The member shall be personally liable for the payment of such penalty. LSA-R.S. 42:28.

In an action to enforce the Open Meetings Law under LSA-R.S. 42:25-28, the district court has original jurisdiction, and the appellate court reviews the district court's findings for errors of law or manifest errors of fact. See LSA-R.S. 42:25(C) and 42:27(A); **Rushing v. Southeastern Louisiana University**, 2022-0032 (La.App. 1 Cir. 9/16/22), 2022 WL 4286824, *4 (unpublished opinion), writ denied, 2022-1723 (La. 2/14/23) 355 So.3d 618. Under the manifest error standard, to reverse a district court's factual conclusion, the appellate court must satisfy a two-step process based on the record as a whole: There must be no reasonable factual basis for the district court's conclusion, and the finding must be clearly wrong. **Rushing**, 2022 WL 4286824 at *4.

5

## DISCUSSION

### Authority to Replace a Member of the Tourism Board

Louisiana Revised Statutes 33:4574(F)(1)(b)(ii) provides for a three-year fixed term for members of tourism boards. The absence of statutory language granting the power of removal, when read in conjunction with the longstanding rule against removal of appointees for a fixed term, has been interpreted to mean that the legislature intended for tourism board members to serve their full terms unless grounds for their removal exist in the Constitution or under state law. See La. Atty. Gen. Op. Nos. 04-0027, 11-0001, 15-0092, 21-0044, and 21-0044A.

On appeal, Mr. Erdey contends that the three-year fixed term found in LSA-R.S. 33:4574(F)(1)(b)(ii) does not apply to Livingston Parish Tourism Board members. To support his argument that the three-year term found in LSA-R.S. 33:4574(F)(1)(b)(ii) is not applicable, Mr. Erdey references LSA-R.S. 33:4574(F)(11), which was enacted by Act 146 of the 2021 Session of the Louisiana State Legislature. Subsection (F)(11) provides:

> Notwithstanding the provisions of Paragraph (1) of this Subsection, the Livingston Parish [Tourism Board] shall be governed by a board of nine directors appointed by the governing authority of Livingston Parish.

In light of Act 146, Mr. Erdey contends that the law is now silent as to the term of Livingston Parish Tourism Board members. Because the law is silent, Mr. Erdey contends that the Livingston Parish Home Rule Charter and general provisions of LSA-R.S. 33:1415 (regarding a governing authority's power to appoint and remove members of certain entities) control. Under the charter and LSA-R.S. 33:1415, Mr. Erdey maintains that the Council had authority to remove Mr. Parker from the Tourism Board at any time, even in the absence of constitutional grounds or grounds under existing law.

We disagree and find that the three-year fixed term found in LSA-R.S. 33:4574(F)(1)(b)(ii) applies herein. Specifically, LSA-R.S. 33:4574(F)(1) provides the general rules for the structure of tourism commissions created thereunder. Subsection (F)(1)(a) provides that such commissions shall be governed by a board of seven directors, while subsection (F)(1)(b)(ii) provides that such directors shall be appointed for a term of three years. The remainder of Subsection (F) is replete with exceptions made to these rules for specific tourism commissions. Subsection (F)(11) merely expands the number

6

of directors for the Tourism Board from seven to nine (apparently to to match the number of Parish Council districts in Livingston Parish). It makes no mention of a change to the three-year fixed terms provided in Subsection (F)(1)(b)(ii). As such, Subsection (F)(11) does not affect the three-year fixed terms generally established for tourism boards created by the statute. Therefore, given that the three-year term provided by LSA-R.S. 33:4574 applies to Mr. Parker's position, we find no error in the trial court's declaration that the Council lacked authority to remove Mr. Parker from the Tourism Board absent constitutional grounds or under existing state law.

### Violations of the Louisiana Open Meetings Law

#### Item 20(a) on the Council's March 14 Agenda

The Louisiana Open Meetings Law requires that any items on an agenda for all public bodies "be listed separately and described with reasonable specificity." LSA-R.S. 42:19(A)(1)(b)(ii)(bb).[2] The trial court found that the Council violated the Open Meetings Law by failing to properly notify Mr. Parker and the public it intended to remove Mr. Parker from the Tourism Board, and that the Council failed to describe item 20(a) on the March 14, 2024 agenda with reasonable specificity.

On appeal, Mr. Erdey contends the March 14, 2024, agenda item was sufficiently specific to let the ordinary person in Livingston Parish know that the subject concerned Mr. Parker's position on the Tourism Board. Agenda item 20(a) read as follows:

> Board (re)appointments/Resignation(s)
> a. Livingston Parish Convention and Visitors' Bureau/Tourism Board—Billy Taylor/Joe Erdey

Mr. Erdey points out that at the hearing, Eric Edwards, Executive Director of the Tourism Board, testified that he knew the item involved District 9, Mr. Erdey's Council District and Mr. Parker's correlative Tourism Board District, given Mr. Erdey's name on the agenda by the item. Similarly, Mr. Parker indicated, when speaking about the later March 28 agenda item, he could determine who the item was referencing though his name was not on the agenda, testifying as follows:

---

[2] To "take up a matter not on the agenda" requires "unanimous approval of the members present at a meeting of the public body." Further, "[a]ny such matter shall be identified in the motion to take up the matter not on the agenda with reasonable specificity, including the purpose for the addition to the agenda, and entered into the minutes of the meeting." LSA-R.S. 42:19(A)(1)(b)(ii)(cc).

My name is not on the agenda, but it's the District 9 -- and we've got nine districts and it's in District 9, and I represent District 9 on the tourism board and everybody knows that. And you don't have to be a rocket scientist to figure out, well, I wonder who they're talking about. No. They're talking about Marcell Parker. That's who they're talking about.

Mr. Erdey posits that while Mr. Parker was referencing the March 28th agenda in the above testimony, the language for the March 14, 2024 agenda is nearly identical. As such, Mr. Erdey concludes that agenda item 20(a) on the March 14, 2024, Council agenda was sufficiently specific to inform the public that the Tourism Board District 9 seat was at issue such that there was no violation of the Open Meetings Law.

In opposition, Mr. Parker contends that agenda item 20(a) was not described with reasonable specificity. Mr. Parker notes that Mr. Edwards, when questioned as to whether "a plain Jane or plain Joe citizen" would understand what the Council was "doing that day" concerning agenda item 20(a), Mr. Edwards responded "No." Further, Mr. Parker points out that Mr. Erdey himself acknowledged the agenda only referenced reappointments and resignations, but Mr. Erdey was seeking a "removal." Although Mr. Erdey did not believe the agenda item was misleading, he also admitted that "[t]he agenda … does not refer to what [Mr. Erdey] ultimately wanted to do and what [he] ultimately did." Mr. Parker also notes that Council Clerk, Sandra Teal, the person responsible for drafting the agendas for Council meetings, testified that she did not realize what actually occurred at the March 14 meeting until drafting the minutes from the meeting. Fellow Councilmember Goff testified "that the agenda wasn't very specific" and acknowledged that he was not aware of any additional information in the agenda that would have explained the reasons for the item being on the agenda. Further, Mr. Parker testified that he was first informed of his removal from the Tourism Board via phone call on March 18—four days after the Council's action. In light of the above, Mr. Parker concludes that agenda item 20(a) was not described with reasonable specificity.

Considering the foregoing evidence, we conclude that the trial court's ruling that the March 14, 2024, agenda item 20(a) was not described with reasonable specificity as required by LSA-R.S. 42:19(A)(1)(b)(ii)(bb), was not manifestly erroneous. There was a factual basis for the trial court to conclude that no reasonable member of the public could read the agenda item and determine that the removal of Mr. Parker from the Tourism

8

Board was on the agenda, especially given that Mr. Parker was not or had not resigned, and this finding is not clearly wrong. See **Pitre v. Buddy's Seafood**, 2011-0175 (La.App. 1 Cir. 8/16/12), 102 So.3d 815, 820, writ denied, 2012-2058 (La. 11/16/12), 102 So.3d 41.

Executive Session at the March 28 Meeting

The trial court also found that the Council violated the Open Meetings Law by going into executive session on March 28, 2024, in connection with item number 17 on the agenda. Louisiana Revised Statutes 42:16 of the Open Meetings Law provides that an executive session "shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:17." Louisiana Revised Statutes 42:17(A)(1)-(10) provides the exclusive list of matters to be discussed in executive session. See **Brown v. East Baton Rouge Parish School Bd.**, 405 So.2d 1148, 1154 (La.App. 1 Cir. 1981)("[B]ecause the exemptions contained in R.S. 42:6.1 A(1)-(8) [redesignated as LSA-R.S. 42:17 by Acts 2010, No. 861, § 23] are in derogation of the broad public policy of openness, we find that these eight enumerated reasons for an executive session are exclusive.") While LSA-R.S. 42:17(A)(1) permits an executive session to discuss "character, professional competence, or physical or mental health of a person," the statute further expressly provides that "nothing in this Paragraph shall permit an executive session for discussion of the appointment of a person to a public body[.]"

Mr. Erdey contends that the trial court erred in concluding that the Council violated the Open Meetings Law by entering into executive session at March 28, 2024, Council meeting to discuss agenda item 17. The relevant item on the agenda provided:

> Executive Session: Joseph "Joe" Erdey, Council District 9
>
> a. Discussion of the character, professional competence, physical and/or mental health of a Livingston Parish Convention and Visitors Bureau Member as per Louisiana Revised Statute RS 42:17(1) and consideration of removal of board member from the Livingston Parish Convention and Visitors' Bureau

Mr. Erdey, while admitting that most of the items above were not discussed in executive session, alleges that Mr. Parker's professional competence was at issue given Mr. Erdey's position that Ms. Levy was a better candidate for the Tourism Board. As such, Mr. Erdey avers that the Council had authority to enter executive session.

9

We disagree. Mr. Erdey's belief that Ms. Levy was a better candidate does not equate to Mr. Parker's professional competence being called into question. Further, as noted by Mr. Parker, this is belied by Mr. Erdey's own statements at the March 28, 2024, Council meeting wherein Mr. Erdey, prior to the Council entering executive session, specifically stated that "things such as [Mr. Parker's] character[,] **competence**[,] physical [health], mental [health]," were not at issue. (Emphasis added.) Rather, he simply wanted to replace Mr. Parker. Despite this public acknowledgment that none of the stated reasons that would allow the Council to enter executive session existed, the Council still elected to go into executive session to discuss the matter.

Alternatively, Mr. Erdey avers that Mr. Parker could have prohibited the executive session, but Mr. Parker chose not to do so because he did not want his character questioned in a public forum. Even so, at no point during the executive session were the character, professional competence, physical health, or mental health of Mr. Parker ever discussed. Councilmember Goff confirmed the same, testifying that in the executive session the only "cause discussed" for removal of Mr. Parker was "I have someone better. And that was pretty much it."

Considering the foregoing, we find no manifest error in the trial court's conclusion that the executive session violated the Open Meetings Law. Evidence introduced at trial failed to establish any justification to enter executive session to discuss Mr. Parker's removal and replacement. Moreover, Mr. Erdey has pointed to no exception in LSA-R.S. 42:17(A)(1)-(10) that permitted the executive session merely because Mr. Erdey believed he had a more qualified candidate for the Tourism Board. As such, the executive session violated LSA-R.S. 42:16 and 42:17 of the Open Meetings Law.

## Award of Attorneys' Fees

Mr. Erdey argues that there is no basis for the attorneys' fees award because there was no violation of the Open Meetings Law. However, as noted above, we have found no manifest error in the trial court's conclusion that that the Council violated the Open Meetings Law. Moreover, LSA-R.S. 42:26(C) provides that if a party prevails in an enforcement proceeding for an Open Meetings Law violation, "the party shall be awarded

10

reasonable attorney fees and other costs of litigation." Given that Mr. Parker has prevailed in the enforcement proceedings, he was entitled to reasonable attorneys' fees.[3]

### Civil Penalties for Knowing and Willful Violations

Despite the violations of the Open Meetings Law, Mr. Erdey contends that the trial court erred in assessing civil penalties against him because Mr. Parker has failed to show Mr. Erdey knowingly and willfully violated the Open Meetings Law. With regard to the civil penalty for violation of the Open Meetings Law, LSA-R.S. 42:28 provides:

> Any member of a public body who knowingly and wilfully participates in a meeting conducted in violation of this Chapter shall be subject to a civil penalty not to exceed five hundred dollars per violation. The member shall be personally liable for the payment of such penalty. A suit to collect such penalty must be instituted within sixty days of the violation.

Specifically, Mr. Erdey notes that the other eight members of the Council also voted to replace Mr. Parker on March 14, 2024, and also voted to enter into executive session on March 28, 2024, which Mr. Erdey avers "evidences that [he] was of like mind with the entire Council." Mr. Erdey also points out that Brad Cascio, the Parish's legal advisor, attended both meetings, and at no point did Mr. Cascio give any indication that the actions under agenda item 20(a) at the March 14, 2024, meeting were improperly noticed nor did Mr. Cascio raise any concerns about the March 28, 2024, agenda item or executive session. Mr. Erdey maintains that it was reasonable for him, as well as the other eight members of the Council, to rely on Mr. Cascio's silence.[4] Accordingly, Mr. Erdey concludes that the imposition of the civil penalties should be reversed.

In opposition, Mr. Parker asserts that Mr. Erdey knowingly and willfully participated in meetings that violated the Open Meetings Law. Mr. Parker avers that the violations of the Open Meetings Law would have not have occurred but for Mr. Erdey's actions.[5]

---

[3] Mr. Erdey does not challenge the amount of the attorneys' fees award.

[4] Mr. Erdey avers that reliance also seems particularly reasonable considering that there was an attempt to add an additional issue to the executive session on March 28, 2024, but Mr. Casio spoke up and advised the Council what steps to take to properly discuss the second issue in the executive session. Mr. Erdey contends that the minutes of the March 28, 2024, meeting evidence that the Council relies upon counsel to advise when they may be going astray. On March 28, the Council followed Mr. Cascio's advice regarding this item.

[5] Mr. Parker notes that Mr. Erdey acknowledged that the decision to replace Mr. Parker was always on him, referencing the following testimony from Mr. Erdey: "That decision was within me and only me"; "I didn't try to win nobody over [...] This is my decision to make"; "It was all on me."

Regarding the March 14 meeting, Mr. Parker notes that Mr. Erdey testified that he placed the item on the agenda, and the agenda item failed to mention Mr. Parker by name. Moreover, while the agenda item was styled as "board (re)appointments/ resignation(s)," Mr. Parker was not resigning nor nearing the end of his term such that a reappointment was applicable. Further, Mr. Parker contends that the record reveals that Mr. Erdey misled his fellow councilmembers, and Mr. Erdey confirmed that the agenda item for the March 14 Council meeting did not accurately reflect what he intended to do at the meeting.

Regarding the March 28 meeting, Mr. Parker contends that Mr. Erdey knew that there was no basis for executive session, and he publicly proclaimed at the meeting that he entered executive session with the Council simply because he wanted to replace Mr. Parker with someone different.[6] Despite no basis, the Council moved into executive session thereby enabling Mr. Erdey to hold a private discussion without any minutes or recordation of the meeting, which Mr. Parker maintains violates the spirit and letter of the Open Meetings Law. Accordingly, Mr. Parker concludes that that Mr. Erdey knowingly and willfully participated in the two meetings he knew were in violation of the Open Meetings Law.

As noted above, civil penalties can be awarded only if a councilmember "knowingly and willfully participates in a meeting in violation of the [Open Meetings Law]." LSA-R.S. 42:28. "Knowingly and willfully" are not defined in the statute. Even so, "knowing and willfully" under LSA-R.S. 42:28 clearly requires more than mere negligence to warrant civil penalties under the statute. See **Courvelle v. Louisiana Recreational and Used Motor Vehicle Com'n**, 2008-0952 (La.App. 1 Cir. 6/19/09), 21 So.3d 340, 347. In another context where "knowing and willful" language is used, but not defined, the Louisiana Supreme Court has noted that "mere neglect" is not enough. See e.g., **In re Flaherty**, 2011-0418 (La. 7/1/11), 66 So.3d 461, 465-66 (Failure to adhere to financial disclosure requirements of Louisiana Supreme Court Rule XXXIX is not willful and knowing

---

[6] Mr. Parker also avers that Mr. Erdey sought to replace Mr. Parker with his ex-wife, Chris Levy—a fact Mr. Parker avers that Mr. Erdey did not disclose to the Council. Even so, one councilmember, Erin Sandefeur, did testify that she was aware that Ms. Levy was Mr. Erdey's ex-wife, but could not recall if Mr. Erdey referred to her as his ex-wife at any of the Council meetings.

if due to "mere neglect" where "[t]here is no evidence Respondent acted in bad faith or purposely chose not to file his disclosure statement to obtain some personal or professional gain.") See also **State Through Bd. Of Ethics for Elected Officials as Supervisory Committee on Campaign Finance Disclosure v. Duke**, 94-0398 (La.App. 1 Cir. 4/7/95), 658 So.2d 1276, 1284 ("The word 'willful' generally means, as it is defined by Black's Law Dictionary 1773 (4th ed. 1968), an act done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly.")

The record reflects that Mr. Erdey, as a newly-elected councilmember from District 9, erroneously believed that a councilmember had the right to select the Tourism Board member to represent his district even if that member's term had not expired. While Mr. Erdey had the item placed on the March 14 agenda and may have been negligent in failing to review the agenda item after it had been prepared, he did not draft the item. Although Mr. Erdey failed to exercise due diligence, the record lacks any evidence establishing that Mr. Erdey knowingly and willfully violated the Open Meetings Law at the March 14 Council meeting. Accordingly, we conclude that the trial court erred in ordering Mr. Erdey to pay a civil penalty as a result of his actions at the March 14 Council meeting.

However, following the March 14 meeting, Council Clerk Teal e-mailed all councilmembers several attorney general opinions "specific to Tourism Boards in regard to [their members] serving their term limits and their identity as a separate political entity." Ms. Teal indicated that she sent the e-mail because Mr. Parker's removal had not been done correctly, and the attorney general opinions she attached to the e-mail reflected that the Council could not remove a member from the Tourism Board prior to the expiration of his term unless grounds for his removal could be found in the Constitution or existing state law. Although Mr. Erdey denied receiving the e-mail, Ms. Teal testified that it would "surprise her" if he did not receive the e-mail because Mr. Erdey responded to the e-mail. Specifically, Mr. Erdey's e-mail response was introduced at trial, wherein Mr. Erdey indicated: "Thank you for informing me that my appointment of the Tourism Board was performed incorrectly."

13

Regarding the March 28 Council meeting, Mr. Erdey allowed the Council to enter executive session, despite knowledge that cause was required for Mr. Parker's dismissal and that the reasons listed on the agenda, which perhaps could have allowed the Council to remove Mr. Parker if the agenda item were accurate, were not correct. Further, Mr. Erdey, even after the Council entered executive session, never provided any other basis to have warranted entering executive session or having Mr. Parker removed for cause. Cf. **Courvelle**, 21 So.3d at 347 (No civil penalties due under LSA-R.S. 42:28 because "record does provide ... a reasonable belief by the commissioners, albeit an erroneous one, that a discussion in a noticed executive session of 'sensitive' legal matters and strategy concerning the pending litigation demonstrated a detrimental effect sufficient to justify an executive session.") Accordingly, we conclude that the trial court did not err in finding that Mr. Erdey knowingly and willfully violated the Open Meetings Law in connection with the March 28 Council meeting.

<u>Failure to Join Chris Levy</u>

Mr. Erdey contends that the effect of the trial court's judgment is to remove Ms. Levy from her Tourism Board seat, and, therefore, she had a direct interest in the outcome of this matter. Mr. Erdey maintains that Ms. Levy is a party that should have been joined for a just adjudication under Article 641, and her failure to have been joined renders the judgment an absolute nullity. Louisiana Code of Civil Procedure article 641 provides:

> A person shall be joined as a party in the action when either:
> (1) In his absence complete relief cannot be accorded among those already parties.
> (2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
>     (a) As a practical matter, impair or impede his ability to protect that interest.
>     (b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

Accordingly, Article 641 establishes two sets of circumstance under which a third-party may be considered a party needed for just adjudication. First, under Article 641(1), a person may be considered a party needed for just adjudication if, absent his presence, "complete relief cannot be accorded among those already parties." **Recreation and**

**Park Commission for Parish of East Baton Rouge v. Gautreaux**, 2023-0316 (La.App. 1 Cir. 12/27/23), 394 So.3d 280, 286. Second, under Article 641(2), a person may be considered a party needed for just adjudication if that person claims an interest relating to the subject matter of the suit and his absence would either impair or impede his ability to protect that interest or would leave already-existing parties subject to a substantial risk of multiple or inconsistent obligations. **Id.**

In **Jackson v. Board of Com'rs for Housing Authority of New Orleans**, 514 So.2d 628 (La.App. 4 Cir.), writ denied, 515 So.2d 1111 (La. 1987), the appellate court reviewed a district court decision that found the Board of Commissioners for the Housing Authority of New Orleans violated the Open Meetings Law in awarding an employment contract to the appellant, which had been declared null. While the appellant had been awarded the contract, he was not made a party to the underlying suit. On review, the appellate court found that appellant's "joinder as a party [to the underlying suit] was not required," given that all procedural requirements for challenging the Board's action had been met. **Jackson**, 514 So.2d at 630. Further, the court found that appellant was not an indispensable party,[7] reasoning as follows:

> Although [appellant] was clearly affected by the decision, we find that "a complete and equitable adjudication of the controversy" was made notwithstanding his absence during the proceedings below. We fail to see how anything relevant could have been added by his presence at trial. Any violation of the Open Meetings Law would be evidenced by the agenda and the videotaped recording of the meeting, which were introduced at trial.

**Id.** at 629.

Similarly, Mr. Erdey fails to demonstrate how complete relief cannot be accorded without joinder of Ms. Levy. Mr. Parker sued the parties who took the unlawful action to remove him from his seat and appoint Ms. Levy in his place. Ms. Levy took no action against Mr. Parker, and as such, there is no relief Mr. Parker can obtain from Ms. Levy.

---

[7] Louisiana Code of Civil Procedure articles 641 through 646 were amended by Acts 1995, No. 662, § I. Prior to the statutes' amendments, courts would distinguish between "necessary" and "indispensable" parties. Indispensable parties to an action were those whose interests in the subject matter were so interrelated, and would be so directly affected by judgment, that a complete and equitable adjudication of the controversy could not be made unless they were joined in the action. **Recreation and Park Commission for Parish of East Baton Rouge v. Gautreaux**, 394 So.3d at 286. No adjudication of an action could be made unless all indispensable parties were joined therein. **Id.** at 286-87. The 1995 amendments eliminated the categories of "indispensable parties" and "necessary parties" in favor of a single category of "parties needed for just adjudication." **Id.** at 287. An adjudication made without making a person described in Article 641 a party to the litigation is an absolute nullity. **Id.**

Further, any interest Ms. Levy would have in the underlying suit would seemingly align with the parties that took the unlawful action against Mr. Parker and appointed her—the Livingston Parish Government and Mr. Erdey. Moreover, while Ms. Levy is affected by the trial court's decision, Mr. Erdey does not indicate what additional information Ms. Levy could provide beyond that already provided by the parties, which include the pertinent agendas and minutes. Accordingly, we find no merit in Mr. Erdey's position that Ms. Levy is a party needed for a just adjudication and that the judgment is absolutely null because Ms. Levy was not joined as a party.

<u>Appropriateness of Injunctive Relief</u>

Mr. Erdey avers that the trial court improperly rendered both preliminary and permanent injunctive relief when he did not agree to have the trial court consider both the preliminary and permanent injunction at the same hearing. While parties may agree to consolidate a trial on the merits of the preliminary and permanent injunction, Mr. Erdey notes that a trial court is without authority to unilaterally convert a hearing for a preliminary injunction into a judgment of permanent injunction. **Sleepy Hollow 2018, LLC v. Young**, 2023-0278 (La.App. 1 Cir. 10/18/24), 2024 WL 4523001 at *4 (unpublished), <u>writ denied</u>, 2024-01401 (La. 2/28/25), 402 So.3d 487. Mr. Erdey also maintains that the injunction goes beyond merely preserving the status quo and contends that such relief is not appropriate.[8] <u>See e.g.</u>, **Moore v. iDream Enterprises, Inc.**, 2022-0418 (La.App. 1 Cir. 12/14/23), 380 So.3d 625, 630, <u>writ denied</u>, 2024-00067 (La. 3/5/24), 380 So.3d 569. (A preliminary injunction is an interlocutory judgment designed to preserve the status quo between the parties pending a trial on the merits whereas a permanent injunction is determined on the merits after a full trial in an ordinary proceeding.) Considering the foregoing, Mr. Erdey concludes this court should reverse the judgment as to both the preliminary and permanent injunctions.

---

[8] Mr. Erdey contends that injunctive relief could not "be used to remedy a perceived wrong." <u>See</u> **Limousine Livery, Ltd. v. A Airport Limousine, Service, L.L.C.**, 2007-1379 (La.App. 4 Cir. 3/12/08), 980 So.2d 780, 786 ("An injunction cannot be used to correct a "consummated wrong" or enjoin a "fait accompli.") Mr. Erdey avers that as of the date the petition was filed, Ms. Levy's appointment was almost two months old. Thus, Mr. Erdey avers that the status quo was that Ms. Levy was a member of the Tourism Board and Mr. Parker was not. As such, Mr. Erdey concludes that to the extent the judgment imposes injunctive relief, "such is inappropriate."

16

Summary proceedings may be used for trial or disposition of all matters in which the law permits summary proceedings to be had. LSA-C.C.P. art. 2592(13). Louisiana Revised Statutes 42:26 provides the remedies available in Open Meetings Law enforcement proceedings. It specifies that the court "may grant any or all" of the forms of relief provides therein, and injunctive relief is specifically listed as a form of relief the court may grant. LSA-R.S. 42:26(A)(2). Moreover, Louisiana Revised Statutes 42:26(B) provides that the trial court "has jurisdiction and authority to issue all necessary orders to require compliance with, or to prevent noncompliance with, or to declare the rights of parties under the provisions of this Chapter." Further, LSA-R.S. 42:27(B) directs that "[e]nforcement proceedings shall be tried by preference in a summary manner." Read *in pari materia*, the statutes provide that the trial court must hear Open Meetings Law claims summarily and preferentially, and the trial court is empowered to issue all necessary orders to enforce the provisions of the Open Meetings Law—including injunctive relief.

As noted above, claims brought under the Open Meetings Law must proceed via summary process. See LSA-R.S. 42:27(B). The Open Meetings Law does not specifically reference preliminary and permanent injunctive relief. Rather, it allows the district court to issue injunctive relief "in a summary manner." See **Norris v. Monroe City School Board**, 580 So.2d 425, 428 (La.App. 2 Cir. 1991) ("The district attorney is a proper party to enforce the Open Meeting Law; he may pray for injunctive relief and proceed by summary process.") Disposing of injunctive relief summarily only furthers the goal of resolving Open Meetings Law claims quickly. See **Greemon v. City of Bossier City**, 2010-2828 (La. 7/1/11), 65 So.3d 1263, 1272 n.9. By contrast, **Sleepy Hollow 2018, LLC** and **Moore** involved both a preliminary injunction and permanent injunction, the latter of which must proceed via ordinary process.

Even so, the trial court afforded the parties an opportunity to delay the hearing to allow the parties additional time. However, the parties declined the court's offer, and all agreed to proceed to a trial on the merits that day as scheduled. Further, at the hearing eight witnesses testified and multiple items were introduced into evidence, including the pertinent agendas and minutes. After the hearing, the trial court afforded the parties the opportunity to delay for further briefing. However, all parties agreed to submit the case

for decision at that time. Mr. Erdey did not object to the form of the proceedings before, during, or after the trial court hearing.

Considering the foregoing and based on the specific facts presented herein, we find no error with the injunctive relief issued by the trial court.

## CONCLUSION

For the foregoing reasons, we reverse that portion of the August 5, 2024 trial court judgment that assessed a civil penalty award in the amount of $500 arising from the March 14 Council meeting against Joseph Erdey. Accordingly, we amend the judgment to reduce the civil penalty award due from $1000 to $500. We affirm the judgment in all other respects. Costs of this appeal are assessed to appellant, Joseph Erdey.

**JUDGMENT REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.**